2001 ND 30

Heather MOSZER, Plaintiff,

and

American Family Mutual Insurance Company, Plaintiff, Appellant and Cross–Appellee,

v.

Mike WITT, Defendant, Appellee and Cross–Appellant.

Mike WITT, Plaintiff, Appellee and Cross–Appellant,

v.

Heather MOSZER, Defendant, Appellant and Cross–Appellee.

Nos. 20000202, 20000203.

Supreme Court of North Dakota.

Feb. 15, 2001.

Steven Francis Lamb, Senior Claims Attorney, American Family Insurance, Fargo, ND, for plaintiff, appellant, and cross-appellee American Family Mutual Insurance Company and defendant, appellant, and cross-appellee Heather Moszer.

William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, ND, for defendant, appellee, cross-appellant, and plaintiff Mike Witt.

KAPSNER, Justice.

[¶ 1] Heather Moszer and American Family Mutual Insurance Company ("American Family") appealed from a judgment dismissing their claims for damages against Mike Witt and from an order denying their motion for a new trial. Witt appealed from an order denying his motion

to dismiss American Family's subrogation claim against him for damages sustained by Scott Akers. We hold the jury verdict is inconsistent and irreconcilable and the trial court erred in its communication with the jury during the deliberation process. The trial court, therefore, abused its discretion in denying the motion for a new trial. We also hold Witt's objection to American Family's assignment from and claim for damages on behalf of Akers is without merit, and we affirm the court's order denying Witt's motion to dismiss that claim. We reverse the judgment and the order denying a new trial, and we remand the case for a new trial on the merits.

I

[¶ 2] On December 7, 1996, Heather Moszer was driving in the westbound lane of 13th Avenue South in Fargo and stopped to make a left turn at the University Drive intersection. When traffic cleared as the light turned yellow, she proceeded to make the left turn. A vehicle driven by Mike Witt in the eastbound lane of 13th Avenue South entered the intersection and struck Moszer's vehicle, pushing it into a vehicle driven by Scott Akers. All three vehicles were damaged in the accident. Moszer and her insurer, American Family, commenced a small claims court action against Witt, who removed the matter to district court and brought a separate action against Moszer for damages to his vehicle. The two actions were consolidated for trial. American Family sought subrogation of $2,715 for payments made to Moszer and of $1,459.12 for payments made to Akers. Moszer sought her deductible of $100. Witt sued for damages to his vehicle of $2,269.27.

[¶ 3] Witt's motion to dismiss American Family's subrogation claim on behalf of Akers was denied by the trial court on January 27, 2000. Following a jury trial, judgment was entered dismissing Moszer's and American Family's claims against Witt

and awarding Witt 100 percent of his damages, plus costs.

[¶ 4] Moszer and American Family moved for a new trial, alleging several grounds. They asserted under N.D.R.Civ.P. 59(b)(1) there were irregularities in the proceedings which denied them a fair trial, alleging the jury verdict was inconsistent, the trial court made changes to the special verdict form during jury deliberations without first seeking approval of the parties, and the trial court held improper discussions and gave improper instructions to the jury during the deliberation process. They asserted a right to a new trial under N.D.R.Civ.P. 59(g) because there was plain disregard by the jury of the instructions of the court so as to demonstrate a misapprehension of the instructions. They also sought a new trial under N.D.R.Civ.P. 59(b)(6), claiming there was insufficient evidence to support the jury verdict. The trial court denied the motion.

## II

[¶ 5] Moszer and American Family assert they are entitled to a new trial because the jury verdict is inconsistent and irreconcilable and because of the irregularity of proceedings conducted by the trial court during the jury deliberation process.

[¶ 6] The jurors and the parties were brought into the courtroom after the jury indicated it had reached a verdict. On the special verdict form the jury found Moszer was negligent and her negligence was a proximate cause of the accident. The jury found Witt was neither negligent nor a proximate cause of the accident, but the jury apportioned fault for the accident 75 percent to Moszer and 25 percent to Witt. In open court with the parties present, the trial judge had a discussion with the jury:

THE COURT: ... Question No. 3 says do you find by the greater weight of the evidence that Defendant Mike Witt was negligent at the time and place referred to in the evidence. Answer yes or no. You said no, and then that he wasn't the proximate cause. But then you put 25 percent of negligence to him.

THE JURY: We misunderstood the question. Then we misunderstood the question in it's [sic] entirety, I imagine.

THE COURT: Well,—

THE JURY: We don't believe he was negligent.

THE COURT: You don't believe he was negligent at all?

THE JURY: Uh-huh.

THE COURT: He wasn't negligent at all. Okay. So in your instruction [sic] on the 25 percent—so are you saying then that Heather Moszer was a hundred percent negligent? Is that what you were intending?

THE JURY: I guess the question we had, if Mike was speeding up, if he wouldn't have sped up that might have avoided it. But we weren't there, we don't know.

There was further discussion between the court and the jurors, concluding with the following exchange:

THE COURT: You're saying he's at fault 25 percent, or negligent 25 percent? It's the same thing. Negligence and fault is the same thing.

A JUROR: It would be negligence. Then it would be negligence. That would be negligence.

So our answer would have been yes.

THE COURT: That's what I was wondering. No proximate cause you're saying but he was negligent?

A JUROR: No. We're saying there was a proximate cause but no negligence.

We are totally confused.

THE COURT: Maybe we'll have to send you back there.

THE JURY: That's fine. We're not judges.

THE COURT: Because you can have somebody who—well, it's happened where they're negligent but were not

the proximate cause of the accident. We've had that happen.

Or, you know, we can send you back there and have you look at it again, you know, just so we don't have an inconsistent verdict here is all we're looking at.

[¶ 7] The court then recessed while the jury deliberated further and again reached a verdict. The jury found Moszer was negligent, her negligence was a proximate cause of the accident, and the jury apportioned 75 percent of the fault to her. The jury found Witt was not negligent, but he was a proximate cause of the accident, and the jury assigned 25 percent of the fault to him. The following exchange in open court with the parties present occurred between the court and the jury:

THE COURT: . . . . Well, now we've got a little problem here. Question No. 3. The jury found that by the greater weight of the evidence was the Defendant, Mike Witt, negligent at the time and place of the accident referred to in the evidence? No. You find by the greater weight of the evidence that Defendant Mike Witt's negligence was a proximate cause of the accident referred to in the evidence. Yes. But then in the verdict form it says he was 25 percent negligent. See, there's no such thing as 25 percent proximate cause.

A JUROR: We were just discussing what the proximate cause sheet said and it's really confusing. As where one is negligent at time and place, the other one is negligent and a proximate cause.

. . . .

THE COURT: A proximate cause, it says, is a cause which in natural and continuous sequence produces the injury and without which the injury would not have occurred. It is a cause which had a substantial part in bringing about the injury either immediately or through events which follow one another.

I mean, there are instances where somebody may be negligent but their negligence maybe doesn't do anything. So it's not the proximate cause of the accident. You know, that happens in some cases.

But I don't know of a situation where you have no negligence but a proximate cause of the accident. You can have it the other way around, you know. I can be negligent but that may not proximately cause any harm, you know.

A JUROR: So we just basically—

THE COURT: I don't know. But we'll get it straightened out before we leave.

[¶ 8] There was considerable additional discussion between the court and the jurors, with the court trying to ascertain the jury's intent in answering the questions the way the jury did. At one point during the discussion the trial court attempted to give the jury an example of the elements of negligence and proximate cause by describing a hypothetical situation in which a doctor "operating could be negligent and not put enough stitches in." The jury expressed confusion over the definitions of negligence and proximate cause, and there was considerable continued discussion between the court and the jurors. Ultimately, the jury arrived at a third verdict during the open court discussion with the trial judge. The jury found Moszer was negligent, her negligence was a proximate cause of the accident, and it assigned her 75 percent of the fault for the accident. This time, however, the jury found Mike Witt was negligent but was not a proximate cause of the accident, and the jury still assessed 25 percent of the fault for the accident to Witt.

[¶ 9] In an attempt to reconcile the jury's findings, the court eliminated language on the special verdict question allocating percentages of fault that was a proximate cause:

A JUROR: So we can leave the 75–25 there.

A JUROR: Even if it's no approximate [sic] cause.

THE COURT: Yes, you can. If that's what you wish.

. . . .

THE COURT: ... Just taking all the fault will do it. And I'm going to take out that proximate cause. Now you make sense. I understand your situation there. I see the confusion now.

. . . .

THE COURT: Taking all the fault of the accident as 100 percent what percentage do you attribute to, A. Heather Moszer: 75 percent. B. Defendant Mike Witt: 25 percent. And Scott Akers: Zero percent. And that gives a total of 100 percent.

Is that what you wanted to do?

A JUROR: That's what we wanted to do.

. . . .

THE COURT: .... [A]re you satisfied that's the jury's verdict?

MR. LAMB [Plaintiffs' counsel]: I'm not certain.

A JUROR: Would you like us to fill out another form?

THE COURT: Fill out another form?

MR. LAMB: Well, no. The question is taking all the fault that was the proximate cause of the accident. I think that's got to be straightened out.

THE COURT: We just did. I took out the proximate cause so they understood it. You can be negligent without being the proximate cause because you're [sic] negligence can be somewhat harmless.

I've had a lot of harmless negligence in my life. So, yeah, we've had verdicts like that before.

But my question is: Do you want them to fill out another verdict form or are you satisfied with this verdict form as it stands now?

MR. LAMB: As it stands right now? We're taking out the proximate cause. I think that's got to be in there, Judge.

. . . .

MR. LAMB: I'm going—I'm in a really awkward position in responding.

THE COURT: Well, I think this is the best we can do.

Thereafter, judgment was entered on this verdict, dismissing Moszer's and American Family's claims and awarding Witt 100 percent of his damages, even though there remained on the special verdict form a 25 percent fault assessment against Witt.

## A

[¶ 10] Moszer and American Family assert the verdict is inconsistent and irreconcilable, and the trial court abused its discretion in denying them a new trial on that ground. Under N.D.R.Civ.P. 59(g) the court may vacate a jury verdict and grant a new trial where there has been "plain disregard by the jury of the instructions" so as to convince the court "the verdict was rendered under a misapprehension of the instructions." A motion for a new trial is addressed to the sound discretion of the trial court, and on appeal its decision will not be overturned unless there is an affirmative showing of a manifest abuse of discretion. *Kronberger v. Zins*, 463 N.W.2d 656, 658 (N.D.1990).

[¶ 11] We uphold special verdicts on appeal whenever possible and set aside a jury's special verdict only if it is perverse and clearly contrary to the evidence. *Fontes v. Dixon*, 544 N.W.2d 869, 871 (N.D.1996). We have adopted the following test for reconciling apparent conflicts in a jury's verdict:

> "[W]hether the answers may fairly be said to represent a *logical and probable decision* on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial."

*Barta v. Hinds,* 1998 ND 104, ¶ 6, 578 N.W.2d 553 (quoting 5A Moore's Federal Practice ¶ 49.03[4], at 49–29 to 32 (1987) in *Grenz v. Kelsch,* 436 N.W.2d 552, 553 (N.D.1989)) (emphasis in original). We reconcile a verdict by examining both the law of the case and the evidence to determine whether the verdict is logical and probable or whether it is perverse and clearly contrary to the evidence. *Barta,* at ¶ 6.

[¶ 12] The trial court, in its written instructions, advised the jury on the definitions of negligence and proximate cause:

> Plaintiffs seek to recover for damage to Heather Moszer's vehicle and Mr. Scott Akers' vehicle.

> The Defendant, Mike Witt, counterclaimed for damage to his vehicle and alleges that the accident was proximately caused by the negligence of Plaintiff Heather Moszer.

> . . . .

> "Ordinary negligence" is the lack of ordinary care and diligence required by the circumstances. Ordinary care or diligence means such care as the person of ordinary prudence usually exercises about one's own affairs of ordinary importance.

> Negligence involves a lack of such concern for the probable consequences of an act or failure to act as a person of ordinary prudence would have had in conducting one's own affairs. It is the lack of such care as persons of common sense and ordinary prudence usually exercise under the same or similar circumstances.

> . . . .

> A proximate cause is a cause which, in natural and continuous sequence, produces the injury, and without which, the injury would not have occurred. It is a cause which had a substantial part in bringing about the injury either immediately or through events which follow one another.

[¶ 13] Proximate cause denotes cause to which liability may be attached. *Beilke v. Coryell,* 524 N.W.2d 607, 611 (N.D.1994). Proximate cause is a separate element from a determination of negligence and is a question of fact for the jury to determine. *Jim's Hot Shot Service, Inc. v. Continental Western Insurance Co.,* 353 N.W.2d 279, 283 (N.D.1984). Both negligence and proximate cause must be found to impose liability. *See Andrews v. O'Hearn,* 387 N.W.2d 716, 731 n. 22 (N.D. 1986).

[¶ 14] Although the jury returned with a verdict, members of the jury quickly informed the court they were confused about the concepts of negligence and proximate cause. While the jury never wavered from assessing on the special verdict form 75 percent of the fault to Moszer and 25 percent of the fault to Witt, the jury never simultaneously found Witt's conduct to constitute both negligence and a proximate cause of the accident. On the first verdict, the jury found Witt's conduct was neither negligent nor a proximate cause of the accident, but the jury assessed him 25 percent of the fault. After considerable discussions with the court, the jury deliberated further and returned a verdict finding Witt's conduct was not negligence but that it was a proximate cause of the accident. There were further discussions between the jurors and the court and, during those discussions and open court deliberations by the jurors, the jury found Witt's conduct was negligent but was not a proximate cause of the accident. Each time the jury assessed 25 percent of the fault to Witt. The jury's answers to the special verdict clearly demonstrate they did not understand or correctly apply the law as given to them in the case, and their confusion was not resolved during the jury's communications with the court.

[¶ 15] A jury verdict which assesses fault to a person after finding the person's negligence was not a proximate cause is a "clearly inconsistent and perverse" verdict. *Westfall by Terwilliger v.*

*Kottke,* 110 Wis.2d 86, 328 N.W.2d 481, 485 (1983). The jury clearly never understood in this case that to assess fault against a person who has been charged with negligent operation of a motor vehicle, the jury must find both that the person's conduct was negligent and that it was a proximate cause of the accident. We conclude the trial court's refusal to vacate the verdict and grant a new trial under N.D.R.Civ.P. 59(g) constituted a manifest abuse of discretion.

### B

[¶ 16] Moszer and American Family also assert they were denied a fair trial and are entitled to a new trial under N.D.R.Civ.P. 59(b)(1) because of the irregularity of the proceedings when the court communicated with the jury during deliberations. We agree.

[¶ 17] If there is a need to further instruct the jurors on a point of law, after the jurors have retired for deliberation, the jury must be brought into court and information requested by the jury "must be given in the presence of or after notice to the parties or counsel." N.D.C.C. § 28–14–19. The parties have a right to have the exceptions noted to the jury instructions to which they did not agree. In the absence of an opportunity to object, all instructions are deemed excepted to. N.D.R.Civ.P. 51(c). *See Kronberger v. Zins,* 463 N.W.2d 656, 659 (N.D.1990). In *Kronberger,* at 659–60 (citation omitted), we found the trial court's ex parte communication with the jury after it had retired for deliberations was not harmless error:

When the trial court merely reiterates a proper instruction, or gives an instruction administrative in nature, the prevailing party may overcome the presumption of harm that attaches to ex parte communications. An administrative instruction is one that goes to the mechanics or process of jury deliberations, as for example, the jury's inability to use a dictionary or whether the jury's verdict must be rendered in writing. In

this case, the question and answer concern neither a reiteration of a previously given instruction nor an instruction which is merely administrative. Instead, the question and answer go directly to the jury's consideration of the merits. Under the circumstances, Zins did not overcome the presumption of harm and the trial court abused its discretion in denying a new trial.

[¶ 18] While the court in this case held its discussions with the jury in open court, with the parties present, the court so injected itself into the jury deliberation process on the merits that the parties were denied their right to have the jury determine the facts on the instructions given to them as approved by the parties. In *Westfall by Terwilliger v. Kottke,* 110 Wis.2d 86, 328 N.W.2d 481, 487–88 (1983) (quoting from and adopting the language of John A. Decker and John R. Decker in *Special Verdict Formulation in Wisconsin,* 60 Marquette Law Rev. 201, 271–73 (1977)), the Wisconsin Supreme Court provides succinct advice on the cautious procedure the trial court must exercise when the jury returns with an inconsistent verdict:

"When a jury returns a verdict containing errors, inconsistencies or lack of compliance with the directions of the special verdict and instructions, the trial court may direct the jury's attention generally to the prospective error and require it to deliberate further to correct any errors that may exist. In doing so, the trial court must cautiously avoid suggesting which of the inconsistent answers is the error and must avoid dominating or dictating how an error or inconsistency is to be corrected.

. . . .

"A trial judge should take the time and opportunity to carefully consider a verdict before announcing it as the verdict of the jury. Unless the judge can instantly conclude that the verdict is proper, it is appropriate for the judge, upon the receipt of the verdict, to retire to

chambers to consider whether the verdict is consistent and correct as to form before accepting the verdict. In the event reinstruction of the jury is necessary, counsel should, of course, be consulted and be given an opportunity to make suggestions or objections."

[¶ 19] In this case, without giving the parties an opportunity to review the inconsistent verdict out of the presence of the jury or to suggest how to further instruct the jury, the trial court engulfed itself in the deliberation process. The court went so far as to cross out language in the approved special verdict form regarding proximate cause in an attempt to reconcile the verdict form with the jury's stated intentions. We conclude the trial court's actions constituted irregularity in the proceedings which denied the parties a fair trial and entitles them to a new trial under N.D.R.Civ.P. 59(b)(1).

### III

[¶ 20] Moszer and American Family assert they are entitled to a new trial under N.D.R.Civ.P. 59(b)(6) because there is insufficient evidence to support the verdict. In view of our conclusion these parties are entitled to a new trial based on other grounds, we need not address this issue. An appellate court need not address questions, the answers to which are unnecessary to the determination of an appeal. *State v. Evans*, 1999 ND 70, ¶ 17, 593 N.W.2d 336.

### IV

[¶ 21] An American Family adjuster recorded a statement of Mike Witt on January 13, 1997 and did not provide him with a copy of the statement within 30 days as required under N.D.C.C. § 31–08–07. Under that statute, failure to provide a statement within 30 days precludes use of the statement "directly or indirectly in connection with a civil action." The trial court granted Witt's motion in limine to exclude this recorded statement. Moszer and American Family assert N.D.C.C. § 31–08–07 is unconstitutional because it intrudes upon the judiciary's authority to promulgate rules of evidence.

[¶ 22] In raising this issue, Moszer and American Family failed to comply with the provisions of N.D.R.Civ.P. 24(c), which provides in relevant part:

> When the constitutionality of an act of the legislative assembly affecting the public interest is drawn in question in any action to which neither the state nor any agency or officer thereof is a party, the parties raising the constitutional issue shall notify the attorney general of the state. The attorney general may intervene as provided in this rule on behalf of the state.

The constitutional issue raised by Heather Moszer and American Family necessarily implicates conflict between the judicial and legislative branches of state government and their respective authorities to make laws and promulgate rules of evidentiary procedures in civil cases. This is a matter which affects the public interest and which, therefore, requires notice to the attorney general under N.D.R.Civ.P. 24(c). We conclude the issue is not at this time properly before us, and we decline to address it.

### V

[¶ 23] Witt filed a cross-appeal from the trial court's January 27, 2000 order, denying his motion to dismiss American Family's claim against Witt under an assignment of rights from Akers. When Moszer and Witt's vehicles collided, Moszer's vehicle was pushed into a vehicle driven by Akers. American Family paid Akers $1,459.12 for the damage to his vehicle and took an assignment of Akers's rights against Witt. Witt moved to dismiss the claim, asserting it was a claim for "contribution" which is not allowed under North Dakota law and also asserting the assignment taken from Akers by American Family was not supported by valid consideration because it was executed "after plaintiff American Family had already

paid Mr. Akers for the damage to his car as a volunteer." The trial court denied the motion to dismiss on these grounds.

[¶ 24] Witt's argument demonstrates confusion about the concept of contribution in a tort case. Under N.D.C.C. § 32–03.2–02, when two or more parties are found to have contributed to an injury "the liability of each party is several only, and is not joint, and each party is liable only for the amount. of damages attributable to the percentage of fault of that party," except that persons who act in concert in committing a tortious act are jointly liable. Consequently, under North Dakota statutory law, tortfeasors who have not acted in concert are precluded from bringing claims for contribution against each other. *Target Stores v. Automated Maintenance Services, Inc.,* 492 N.W.2d 899, 903 (N.D.1992). No one in this lawsuit has accused Akers of a tortious act. Akers was an innocent bystander whose vehicle was damaged as a result of the collision between Moszer and Witt. American Family's claim here is not for contribution from Witt for damages paid to Akers on Moszer's behalf. Rather, this claim by American Family is a claim brought under its assignment of rights from Akers, by which American Family has assumed Akers's direct claim against Witt for damages suffered by Akers as a result of Witt's negligence. We conclude, therefore, Witt's argument this is a contribution claim is without merit.

[¶ 25] Witt also asserts the assignment taken by American Family from Akers is invalid for lack of consideration. Witt has not ·provided authority to persuade us he has standing to assert lack of consideration for an assignment executed between Akers and American Family. Furthermore, the written assignment executed by Akers expressly states that it was entered in consideration of the $1,459.12 paid to Akers by American Family for damage to his automobile. Witt also has provided no authority to support his contention there is a lack of legal consider-

ation simply because the assignment was taken by American Family after it paid Witt for the damaged vehicle. We conclude Witt's issues are without merit and the trial court did not err in denying the motion to dismiss American Family's claim.

## VI

[¶ 26] The order denying Witt's motion to dismiss American Family's claim under its assignment from Akers is· affirmed. The judgment and the order denying Moszer's and American Family's motion for new trial are reversed and the case is remanded for a new trial on the merits.

[¶ 27] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.