2002 ND 162

**Larry KIMBALL, Jr., Plaintiff and Appellant,**

v.

**Jack LANDEIS and Justin Gram, Defendants and Appellees.**

No. 20020100.

Supreme Court of North Dakota.

Oct. 15, 2002.

Rehearing Denied Nov. 5, 2002.

Thomas V. Omdahl, Grand Forks, N.D., for plaintiff and appellant.

Howard D. Swanson, Letnes, Marshall, Swanson & Warcup, Ltd., Grand Forks, N.D., for defendant and appellee Jack Landeis.

Jay H. Fiedler, Pearson Christensen, Grand Forks, N.D., for defendant and appellee Justin Gram.

MARING, Justice.

[¶ 1] Larry Kimball, Jr., appealed from a summary judgment dismissing his negligence claims against Justin Gram and Jack Landeis. We conclude Kimball's claim against Landeis is barred by the statute of limitations, but Kimball has raised a genuine issue of material fact in his claim against Gram. We affirm in part, reverse in part, and remand.

I

[¶ 2] On February 17, 1995, Kimball and Landeis were seriously injured when snowmobiles they were operating were involved in a head-on collision. The accident occurred in a ditch adjacent to a county road near Grand Forks. Kimball and Landeis both suffered closed head injuries, and they have no recollection of the accident. Gram was the only other person present at the accident. According to Gram, he and Landeis were traveling east on their snowmobiles in the ditch on the north side of the road shortly after 1 a.m.

when Gram saw headlights of another snowmobile, which turned out to be Kimball, approaching in the ditch from the east. According to Gram, when he saw Kimball's approaching snowmobile, he pulled up on the slope of the ditch near the shoulder of the road. According to Gram, Kimball's snowmobile and Landeis's snowmobile collided head-on to Gram's left. In June 1995, Landeis's mother, Gayle Landeis, was appointed as guardian for him, and she has continuously served as his guardian since then.

[¶3] In February 2001, Kimball individually served Gram and Jack Landeis with a summons and complaint, alleging they negligently caused his injuries. Jack Landeis answered, claiming insufficient service of process and denying liability. Landeis also cross-claimed against Gram and counterclaimed against Kimball. Landeis's answer, cross-claim, and counterclaim did not refer to the guardianship. In July 2001, however, Landeis's cross-claim and counterclaim were dismissed by a stipulation of the parties, and that stipulation stated Landeis was acting through his guardian. This record also includes a separate February 12, 2001 complaint by Landeis, acting through his guardian, against Kimball and Gram, but the record does not reflect when, or if, that complaint was served on Kimball. In November 2001, Landeis moved to dismiss Kimball's action, claiming insufficient service of process because Kimball had not served Landeis's guardian. Gram also moved for summary judgment, claiming Kimball had failed to provide any evidence that Gram caused Kimball's injuries.

[¶4] The trial court treated Landeis's motion to dismiss as a motion to quash service, and the court quashed the service on Landeis. The court also granted Gram's motion for summary judgment, concluding Kimball had failed to provide

any competent evidence that Gram had any legal duty to protect Kimball from his injuries, or that Gram's conduct in any way contributed to Kimball's injuries. On January 24, 2002, Kimball personally served the summons and complaint on Landeis's guardian. Landeis then moved for summary judgment, asserting Kimball's claim against him was barred by the statute of limitations. The court granted Landeis's motion for summary judgment, and Kimball appealed.

## II

[¶5] Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to a judgment as a matter of law and if no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. *E.g. Van Valkenburg v. Paracelsus Healthcare Corp.*, 2000 ND 38, ¶17, 606 N.W.2d 908. In *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (citations omitted), we outlined the duty of a party opposing a motion for summary judgment:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of his claim and on which he will bear the burden of proof at trial. *Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶¶ 11, 42, 625 N.W.2d 241. When no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Van Valkenburg*, at ¶ 27.

### III

[¶ 6] Kimball argues the trial court erred in granting summary judgment on his negligence claim against Gram. The trial court decided Kimball had failed to provide any competent and admissible evidence that Gram had any legal duty to protect Kimball from his injuries, or that Gram's conduct in any way contributed to Kimball's injuries. Kimball argues he provided sufficient evidence to raise a genuine issue of material fact that Gram negligently operated his snowmobile on February 17, 1995, and that Gram's negligence caused the accident. Kimball argues Gram had a duty to pull over earlier, or to warn Landeis about the danger, and Gram did neither, which resulted in insufficient time for Kimball and Landeis to see each other and avoid the collision.

[¶ 7] Actionable negligence consists of a duty on the part of an allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996). For negligence actions, an actor has a duty to exercise reasonable care under the circumstances. *Doan ex rel. Doan v. City of Bismarck*, 2001 ND 152, ¶ 25, 632 N.W.2d 815. A proximate cause is a cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. *Jones v. Ahlberg*, 489 N.W.2d 576, 581 (N.D.1992). The negligence of two or more persons may contribute concurrently as the proximate cause of an injury, and to be a proximate cause of an injury, a person's conduct need not be the last cause nor the sole cause of an injury. *Id.* To warrant a finding that a person's conduct is the proximate cause of an injury, the injury must be the natural and probable result of the conduct and must have been foreseen or reasonably anticipated by that person as a probable result of the conduct. *Id.* at 581–82. Proximate cause is generally a question of fact. *Moszer v. Witt*, 2001 ND 30, ¶ 13, 622 N.W.2d 223. Although negligence actions ordinarily involve questions of fact and generally are not appropriate for summary judgment, issues of fact may become questions of law if reasonable persons could reach only one conclusion from the facts. *Diegel*, at 370.

[¶ 8] We initially consider the evidence presented in Gram's motion for summary judgment. Kimball's complaint alleged

III. Gram was carelessly, recklessly, and negligently traveling the wrong way when prior to meeting Larry, he braked and pulled over to the right side to allow Larry to go by, however, because of Justin

"kicking up" snow, Larry's and Jack's visions were obstructed thereby preventing Larry from seeing Jack and Jack from seeing Larry.

[¶ 9]   In support of his motion for summary judgment, Gram submitted answers to interrogatories by Kimball and Landeis in which they both stated they had no recollection of the accident. Gram also submitted his affidavit, which described the accident

6.   As Jack Landeis and I were riding side by side in the ditch, we saw another snowmobile approaching from the east. We were going about 40 mph. I could see the approaching snowmobile from a long ways off. When I saw the other snowmobile approaching, I immediately slowed and pulled upon [sic] the side slope of the ditch. In fact, I went up onto the shoulder of the road so that one ski was on the shoulder and one ski on the slide [sic] slope of the ditch. At the same time, Jack Landeis slowed his snowmobile. The reason that I moved all the way to the top of the ditch was because there were 3 snowmobiles in it and I wanted to give the other two drivers as much room as I could. I recall the conditions that night and know that nothing I did obscured anyone's vision. I moved up on [sic] to the shoulder of the road in plenty of time. It was a routine maneuver. My snowmobile was not creating any kind of "snow fog" or the like. I moved up the slope of the ditch and onto the shoulder of the road well before the accident. There was plenty of room in the ditch for the Plaintiff and Jack Landeis to pass by one another. I have attached copies of two photographs of the accident scene. While I did not take the photographs, I have examined them and they accurately illustrate the condition of the ditch at the time of the accident.

7.   I did not actually see the collision. I looked down at the ditch a moment after it happened. The collision between the other two snowmobiles occurred to my left. I am aware that Jack Landeis slowed down from his original speed of about 40–50 mph but do not know how fast Plaintiff was going. At the time of the accident, Plaintiff was driving a Polaris 600XCR snowmobile. It is an aggressive, fast sled.

8.   Jack Landeis was an experienced snowmobile rider. Plaintiff had begun riding snowmobiles about 2 years before the accident.

9.   I have reviewed the description of the accident contained in paragraph 3 of Plaintiff's Complaint. It is inaccurate and it does not correctly describe how the accident occurred. My snowmobile was not "kicking up" snow. There was nothing that would have obstructed the vision of either the Plaintiff or Jack Landeis. In fact, I was never driving ahead of Jack Landeis; until I slowed and pulled up onto the shoulder of the road, Jack Landeis and I were driving side by side.

[¶ 10]   In response to Gram's motion for summary judgment, Kimball submitted an unsworn statement by Gram to Joe Whalen on April 6, 1995; an unsworn statement by Deputy Kelly McLean of the Grand Forks Sheriff's Department to Al Kuhn; an affidavit of Kimball's father; excerpts from Gram's deposition; and an excerpt from North Dakota All Terrain Vehicle & Snowmobile Laws as revised in November 1994 by the North Dakota Parks and Recreation Department.

[¶ 11]   At the hearing on the motion for summary judgment, Gram submitted an excerpt from Kimball's deposition; Kimball's answers to interrogatories; and Kimball's answers to requests for produc-

tion of documents which stated "none" in response to Gram's request for "[a]ny and all statements relating to claims, defenses and damages in the above-entitled matter, whether given or taken by parties or non-parties."

[¶ 12] In *Stewart v. Ryan*, 520 N.W.2d 39, 43–44 (N.D.1994), this Court considered the use of an unsworn statement in the context of a motion for summary judgment. This Court said trial courts generally may consider only materials which would be admissible at trial and unsworn, uncertified or otherwise inadmissible documents may be considered in a motion for summary judgment only if no timely objection is made. *Id.* at 43. In *Stewart*, at 44, this Court held an unsworn statement, which was objected to, was not an affidavit and did not qualify as other comparable means for raising a disputed factual issue.

[¶ 13] Here, Gram objected to the unsworn statements by Gram to Whalen and by Deputy McLean to Kuhn. The trial court said it relied on competent and admissible evidence to decide Gram's motion for summary judgment. We conclude the unsworn statements submitted by Kimball were not affidavits or other comparable means for purposes of raising a disputed factual issue. Although Gram also claims Kimball's father's affidavit should not be considered because Kimball did not disclose that statement during discovery, this record does not reflect that the trial court specifically ruled on that issue. In the absence of a specific ruling on that issue, we conclude Kimball's father's affidavit may be considered to determine whether there are any disputed issues of material fact. We therefore consider the affidavits of Kimball's father and Gram and the excerpt from Gram's deposition in deciding this issue.

[¶ 14] Kimball's father's affidavit stated that Gram told Kimball's father "Jack [Landeis] and [Gram] were traveling east in the ditch and that Jack [Landeis] was behind [Gram]. [Gram] said Larry [Kimball] went by him and that by the time he stopped and turned around, the accident had happened. [Gram] said he did not see the accident." Gram's affidavit and deposition indicates visibility was clear on the night of the accident and he was not aware of any condition that reduced the visibility. Gram stated he, Landeis, and Kimball had all activated the headlights on their snowmobiles. According to Gram, he and Landeis were driving their snowmobiles side by side between 40 and 50 miles per hour when Gram saw an approaching snowmobile from a "long ways off." In his deposition, Gram stated he saw Kimball's snowmobile about "a half mile off, or roughly several hundred yards." Gram stated he immediately slowed down to approximately 30 miles per hour and pulled up on the side slope of the ditch. Gram stated he "did not actually see the collision," but he "looked down at the ditch a moment after it happened [and][t]he collision between the two other snowmobiles occurred to [his] left." An exhibit attached to Gram's deposition reflected the accident occurred immediately to Gram's left.

[¶ 15] Gram and Landeis were driving their snowmobiles the wrong way in the ditch. *See* N.D.C.C. § 39–24–09(7). The violation of a statutory duty is evidence of negligence and not negligence per se. *Ebach v. Ralston*, 510 N.W.2d 604, 611 (N.D.1994). Gram's violation of that statutory duty is not necessarily dispositive of Kimball's negligence claim, because actionable negligence requires an injury proximately caused by the breach of a duty. *Diegel*, 546 N.W.2d at 370. Kimball's father's affidavit and Gram's affidavit and deposition raise a disputed issue of fact about whether Landeis and Gram were operating their snowmobiles side-by-

side, or whether Gram was operating his snowmobile in front of Landeis. Moreover, although Gram stated he saw an approaching snowmobile from "a half mile off, or roughly several hundred yards," or a "long ways off" and he immediately slowed down to approximately 30 miles per hour and pulled up on the side slope of the ditch, Gram also stated he did not actually see the collision, but he looked down at the ditch a moment after the accident happened and the collision occurred immediately to his left. In our view, if Gram was operating his snowmobile in front of Landeis, Gram's description of the location of the collision supports a permissible inference the accident happened momentarily after Gram "pulled up onto the side slope of the ditch," which in turn supports an inference that, despite seeing an approaching snowmobile from "a half mile off" or a "long ways off," Gram pulled up onto the side of the ditch at the last minute precluding Landeis and Kimball from seeing each other and avoiding the collision. The disputed facts and Gram's description of where the accident occurred support a permissible inference that Gram failed to exercise reasonable care in operating his snowmobile and that the accident was the natural and probable result of his conduct. We agree with Gram that "[m]ere speculation will not defeat a motion for summary judgment." *Ellingson v. Knudson*, 498 N.W.2d 814, 818 (N.D.1993). In our view, however, reasonable persons could reach different conclusions from the facts and permissible inferences in this case. We therefore conclude the trial court erred in granting summary judgment for Gram.

## IV

[¶ 16] Kimball argues the trial court erred in granting summary judgment for Landeis on the ground that Kimball's claim against Landeis was barred by the statute of limitations.

[¶ 17] Kimball concedes the statute of limitations for his claim against Landeis is six years. *See* N.D.C.C. § 28–01–16; *Lang v. Barrios*, 472 N.W.2d 464, 466 (N.D.1991). The accident happened on February 17, 1995, and Kimball had six years from then to commence an action against Landeis. *See Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D.1990) (stating when there is a perceptible personal injury caused by an accident, the statute of limitations starts to run at the time of the injury). Under N.D.R.Civ.P. 3, a civil action is commenced by the service of a summons. Under N.D.R.Civ.P. 4(d)(2)(C), personal service upon an individual for whom a guardian has been appointed is accomplished by serving the individual's guardian.

[¶ 18] Kimball personally served the summons and complaint on Landeis on February 6, 2001, but Kimball did not serve Landeis's guardian then. This record reflects Landeis, through counsel but without his guardian, prepared an answer dated February 16, 2001, and a cross-claim and counterclaim dated February 17, 2001. The record also includes an affidavit of mailing stating Landeis's answer, cross-claim, and counterclaim were mailed to Kimball on February 17, 2001. Landeis's answer raised insufficient service of process under N.D.R.Civ.P. 12. In November 2001, Landeis moved to dismiss the action, claiming Kimball had not properly served him under N.D.R.Civ.P. 4(d)(2)(C). On January 7, 2002 the trial court quashed the service on Landeis because his guardian was not served in compliance with N.D.R.Civ.P. 4. On January 24, 2002, Kimball personally served the summons and complaint on Landeis's guardian. Landeis then moved for summary judgment, and the trial court granted Landeis's motion, concluding Kimball's action was barred by the statute of limitations.

## A

[¶ 19] Kimball argues his improper service was cured because Landeis had actual notice of the complaint and made a general appearance in the action.

[¶ 20] This Court has said that absent valid service of process, even actual knowledge of the existence of a lawsuit is insufficient to effectuate personal jurisdiction over a defendant. *Helmers v. Sortino*, 545 N.W.2d 796, 799 (N.D.1996). Under our rules of procedure, a special appearance is no longer necessary to contest personal jurisdiction if the lack of jurisdiction is raised in a defendant's answer. *Moon v. Moon*, 499 N.W.2d 597, 600–01 (N.D.1993) (stating civil rules no longer require special appearances and effectively overruling *Petition of Village Bd. of Wheatland*, 77 N.D. 194, 42 N.W.2d 321 (1950)). Under those authorities, we conclude Landeis properly preserved the issue of improper service of process in his answer, and in the absence of valid service of process on his guardian, actual knowledge of Kimball's action did not confer personal jurisdiction over Landeis until his guardian was served.

## B

[¶ 21] Relying in part on N.D.C.C. § 28–01–38, Kimball argues Landeis's codefendant, Gram, was properly served within the limitations period, which, coupled with Landeis's actual notice of the action, precludes summary judgment dismissal of Kimball's claim against Landeis.

[¶ 22] Kimball did not raise an issue about N.D.C.C. § 28–01–38 in the trial court and is precluded from raising it for the first time on appeal. *Estate of Peterson*, 1997 ND 48, ¶ 34, 561 N.W.2d 618. Moreover, N.D.C.C. § 28–01–38, provides that an action is commenced as to each defendant when the summons is served on that defendant, or on a codefendant who is a joint contractor or otherwise united in interest with that defendant. In *Gessner v. City of Minot*, 1998 ND 157, ¶ 10, 583 N.W.2d 90, we concluded two parties were united in interest when they were in such relation to each other with regard to the subject matter of the plaintiff's action that they would necessarily stand or fall together, a judgment against one would necessarily result in liability upon the other, and neither could reasonably raise a defense which was unavailable to the other. Kimball has not alleged any facts that demonstrate Landeis and Gram were united in interest within the meaning of N.D.C.C. § 28–01–38, and that statutory definition of when an action is commenced does not preclude summary judgment for Landeis.

## C

[¶ 23] Kimball also argues the trial court erred in failing to apply the doctrine of equitable tolling. The trial court concluded equitable tolling did not apply because Kimball failed to establish reasonable and good faith conduct on his part.

[¶ 24] This Court has never adopted the doctrine of equitable tolling. *See Reid v. Cuprum SA, de C.U.*, 2000 ND 108, ¶¶ 1, 16, 611 N.W.2d 187; *Braaten v. Deere & Co.*, 1997 ND 202, ¶¶ 12, 19, 569 N.W.2d 563; *Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904, 910 (N.D.1992). In *Reid*, at ¶ 10, *Braaten*, at ¶ 14, and *Burr*, at 910, we cited *Addison v. State*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941, 943–44 (1978), for the California formulation for equitable tolling, which requires a plaintiff to satisfy three criteria for application of the doctrine: 1) timely notice, 2) lack of prejudice to the defendant, and 3) reasonable and good-faith conduct by the plaintiff.

[¶ 25] In *Reid*, 2000 ND 108, ¶ 15, 611 N.W.2d 187, we said *"Addison* and subse-

quent California decisions have said the equitable tolling doctrine operates to protect the claim of a plaintiff who has several legal remedies and, reasonably and in good faith, pursues one of the remedies thereby tolling the limitation for the other remedies." We said the plaintiffs' failure to commence their action against the defendant, a foreign corporation with no registered agent in North Dakota and principal place of business in Mexico, within the statute of limitations was not the result of their timely pursuit of one of several other available legal remedies which may have tolled the statute of limitations for that action. *Id.* at ¶ 16. Rather, we concluded the plaintiffs' failure to commence their action within the statute of limitations resulted from their failure to effectuate timely service of process on the defendant in Mexico. *Id.* We concluded the plaintiffs' failure was the result of their imprudent legal practice, and their conduct was not reasonable. *Id.*

[¶ 26] In *Braaten*, 1997 ND 202, ¶¶ 19–20, 569 N.W.2d 563, we concluded the trial court did not abuse its discretion in refusing to apply the doctrine of equitable tolling, because the plaintiff failed to establish reasonable and good-faith conduct for equitable tolling. We said the plaintiff did not act in good faith in initially claiming federal diversity jurisdiction and filing the action in federal court, because there was no arguable issue of federal jurisdiction under federal law and the plaintiff's imprudent legal practice was not reasonable conduct which would invoke equitable tolling. *Id.* at ¶ 16. We said the plaintiff should have been aware of severe jurisdictional problems when the defendants moved to dismiss the federal action for lack of jurisdiction, and, instead of trying to protect the lawsuit by immediately filing a state claim, the plaintiff waited over a month for certain dismissal of the federal action. *Id.* at ¶ 18.

[¶ 27] In *Burr*, 492 N.W.2d at 910–911, the plaintiff initially sued both government and medical defendants in federal court. After the plaintiff settled with the government defendants, the medical defendants moved to dismiss the federal action, claiming the federal court lacked diversity jurisdiction and pendent party jurisdiction. *Id.* The federal court dismissed the claim against the medical defendants without prejudice, and three months later, the plaintiff sued the medical defendants in state court. *Id.* This Court affirmed the dismissal of the action as time barred, concluding the plaintiff's failure to commence their action in a timely manner was not reasonable and disclosed a lack of diligence. *Id.*

[¶ 28] Kimball claims he was not aware Landeis had a guardian and had no reason to believe Landeis was not competent. He claims he acted reasonably and in good faith when he served Landeis personally and did not serve the guardian until after the expiration of the statute of limitations.

[¶ 29] Statutes of limitation protect important interests of certainty, accuracy, and repose, and equitable tolling is an exception to a statute of limitations, which should be used only in exceptional circumstances. *Motley v. United States*, 295 F.3d 820, 824 (8th Cir.2002). A party who claims the benefit of an exception to a statute of limitations bears the burden of showing the exception. *Id.*

[¶ 30] Here, as in *Reid*, 2000 ND 108, ¶ 16, 611 N.W.2d 187, Kimball's failure to commence his action by serving Landeis's guardian within the statute of limitations was not the result of his timely pursuit of one of several other available legal remedies which may have tolled the statute of limitations for this claim. Rather, Kimball's failure to commence his action against Landeis resulted from his failure to effectuate timely service of process on

Landeis's guardian. According to Kimball, he and Landeis were "best friends." Although Kimball claims Landeis is not incompetent, Kimball admits that, as a result of the accident, Landies cannot speak, he has some difficulty walking, and he gets meals on wheels. Landeis's guardianship is a matter of public record, and Kimball has not demonstrated the guardianship could not have been ascertained by a timely diligent inquiry. *See Motley*, 295 F.3d at 824 quoting *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir.2002) (involving determination of status of defendants as federal employees for purposes of Federal Tort Claims Act). Landeis was not obligated to inform Kimball of the guardianship before the expiration of the statute of limitations, and nothing in this record suggests Landeis or his guardian failed to comply with any legal requirements regarding the guardianship. *See generally* N.D.C.C. ch. 30.1–28 (Guardians of Incapacitated Persons).

[¶ 31] Landeis's February 16, 2001 answer should have reflected the guardianship status, and we do not condone that failure. The order appointing Gayle Landeis as Jack Landeis's guardian gave her "full" guardianship over legal matters. Under the official comments to N.D.R.Prof. Conduct 1.14

> where a legal representative has been appointed to act in behalf of the client, it should be kept in mind that the powers and duties of such representative vary depending upon the nature and extent of the client's disability. The lawyer in the course of representing the client should be cognizant of the powers and duties conferred upon the client's legal representative by the appointing authority as such enumeration of powers and duties will delineate what types of decisions the client may or may not make with regard to the client's own care and well-being, or concerning management of the client's property.

This record, however, reflects an affidavit of mailing of Landeis's answer by counsel for Landeis on February 17, 2001, which was the day the statute of limitations expired. Under these circumstances, Landeis's failure to identify the guardianship in his answer could not have affected Kimball's failure to timely serve Landeis's guardian.

[¶ 32] Moreover, this record also includes a separate complaint, dated February 12, 2001, by Landeis, through his guardian, against Gram and Kimball regarding the same accident, but this record does not reflect when, or if, that complaint was served on Kimball. The record is not clear about when Kimball actually learned about the guardianship. Landeis's answer alleged insufficient service of process and raised a potential problem about service of process. The record reflects Kimball had actual knowledge of the guardianship at least by June 14, 2001, when his counsel stipulated to dismiss Landeis's cross-claim and counterclaim in a stipulation that stated counsel for Landeis was acting for Landeis individually and for Gayle Landeis as his legal guardian. Despite that documentation in June 2001 and Landeis's earlier answer, Kimball took no steps to serve Landeis's guardian until January 24, 2002, after the trial court quashed service of the summons on Landeis. Kimball's failure to demonstrate Landeis's status could not have been ascertained by diligent inquiry, and his belated effort to serve Landeis's guardian is not indicative of reasonable and good faith action.

[¶ 33] On this record, we conclude Kimball failed to establish reasonable and good faith action which would entitle him to equitable tolling. Under these circumstances, we conclude even if we were to adopt the doctrine of equitable tolling, Kimball has not met the requirements for application of the doctrine.

V

[¶ 34] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

[¶ 35] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

NEUMANN, Justice, dissenting.

[¶ 36] I respectfully disagree with the majority. On the record presented to the trial court, I would affirm the grant of summary judgment. I do not agree reasonable persons could reach different conclusions as to the possibility that Gram's actions caused the collision between Kimball and Landeis.

[¶ 37] WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.