# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 74

N.B., and Melissa Oster both
individually and as the natural
parent and legal guardian of N.B.,                    Plaintiffs and Appellants

     v.

Josh Terwilliger, Samantha
Terwilliger, nka, Samantha
Seewalker, and Kevin Terwilliger,                    Defendants and Appellees

### No. 20200185

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Douglas A. Bahr, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Thomas V. Omdahl, Marine on St. Croix, MN, for plaintiffs and appellants.

Victoria A. Thoreson (argued) and Bradley J. Beehler (on brief), Grand Forks, ND, for defendants and appellees Josh Terwilliger and Kevin Terwilliger.

Barton J. Cahill, Moorhead, MN, for defendant and appellee Samantha Seewalker.

# N.B. v. Terwilliger
## No. 20200185

**VandeWalle, Justice.**

[¶1]   Melissa Oster and N.B. appealed from two orders denying motions for a new trial after a jury awarded a verdict in N.B.'s favor. We affirm.

I

[¶2]   Oster and her daughter, N.B., were staying at a residence owned by Kevin Terwilliger. Josh and Samantha Terwilliger were formerly married and lived at the residence. Samantha Terwilliger is now known as Samantha Seewalker, and she is Oster's cousin. On May 26, 2015, N.B. was playing with another child outside the Terwilliger residence while Oster and Seewalker were in the house. Josh and Kevin Terwilliger were not present. A horse on the Terwilliger property kicked N.B. in the head, seriously injuring her. The parties dispute the nature and extent of N.B.'s injuries.

[¶3]   At trial, both sides provided testimony of expert medical witnesses to establish the extent of N.B's injuries. Dr. Rosen, a specialist in physical medicine, rehabilitation, and brain injury medicine, testified for N.B. and Oster. Dr. Rosen indicated N.B. would have permanent long-term effects due to her injury. Deposition testimony of Dr. Tupper, a neuropsychologist and witness for the defense, was read into the record. Dr. Tupper agreed on cross-examination that N.B. would have difficulties functioning long term due to her injuries. Contrarily, a pediatric neurologist called by Josh and Kevin Terwilliger, Dr. Chadwick, testified that N.B. would have no permanent impairment.

[¶4]   The parties also provided testimony of expert witnesses to estimate the total future economic loss N.B. will suffer due to her injuries. N.B. and Oster's economist, Ann Adair, gave a range of potential future economic losses from $401,253 to $736,480. N.B. and Oster also had a licensed counselor and life care planner, Reg Gibbs, testify that N.B.'s life care plan will cost $523,836. The economist for Seewalker, David Jones, testified that N.B. will suffer a total future economic loss of $63,030.

[¶5]   Counsel for Josh and Kevin Terwilliger asked Gibbs about the race of N.B. and Oster on cross-examination. N.B. and Oster did not object. Gibbs was discussing the report he prepared for N.B. The conversation went as follows:

> Q.   Looking at the history that you had in your report – do you have that in front of you, sir?
>
> A.   I do, yes.
>
> Q.   Well, first it starts out with a background talking about [N.B.'s] heritages. European American heritage –
>
> A.   Yes.
>
> Q.   – is that another – is that Native American?
>
> A.   No. European American; so meaning that her ancestry comes from Europe.
>
> Q.   Okay. Well, her mother's Native American; isn't she?
>
> A.   Was predominantly European American.

Later during the same cross-examination, defense counsel, without objection, asked about the income level of Oster while discussing the lost income calculations Gibbs did for N.B. The questioning went as follows:

> Q.   Okay. So you mentioned you based these lost income calculations on an average earnings of $38,428 a year; correct?
>
> A.   Yes.
>
> Q.   But if we look at the work history of her mother, and she's never earned that much in her life, wouldn't that indicate that the likelihood of [N.B.] doing that is not likely?
>
> A.   Not specifically, no.

[¶6]   Without objection during closing arguments, N.B. and Oster argued any money awarded to N.B. would go into a trust until she turned eighteen. In addition to an award for past economic damages for medical bills, N.B. and Oster's attorney asked the jury to award N.B. future economic damages in the $925,089 to $1,260,316 range based on the testimony of their experts. N.B. and Oster also asked the jury to award N.B. future noneconomic damages for pain and suffering in the amount of $4,248,800 to $5,589,704.

[¶7]   Seewalker argued she could accept some fault but also claimed "there's at least as much fault on [Oster]." Seewalker requested the jury compensate Oster for N.B.'s medical expenses in the amount of $32,047.83, and provide Oster with $5,000 to $10,000 in past economic damages and $5,000 to $10,000 in future economic damages. She also requested the jury award N.B. $63,030 in future economic damages based on the testimony of Jones, $25,000 in past non-economic damages, and $75,000 in future non-economic damages.

[¶8]   Josh and Kevin Terwilliger asked the jury to find they had no fault in the accident. They argued the jury should maybe award Oster $32,000 in medical expenses, $5,000 for future economic damages, and a nominal amount for past and future non-economic damages. They also argued N.B. should get $63,030 in future economic damages and a fraction of the total medical expenses for past and future non-economic damages.

[¶9]   While it was deliberating, the jury sent the district court a written question asking, "Can we know if any compensation absolutely be put in a trust for [N.B.]?" In the presence of the parties, the court read its draft answer to the jury's question stating, "If you find a party is entitled to damages, you should award such damages as are proportionate to the harm or loss suffered. It is not your role to consider what is done with the damages, if awarded." After the court read its draft answer, N.B. and Oster's attorney requested the court include in the answer that money awarded for N.B. would have to go into a trust. The court declined saying it did not believe it was the role of the court to tell the jury what happens with the funds after the jury awards them. The court stated, "Their role is to determine whether there was fault, and if there was, what is the amount of damages?" N.B. and Oster's counsel ultimately

3

responded to the court's decision to answer the jury's question with "I'm okay with it." The court then submitted its original draft answer to the jury.

[¶10] On December 20, 2019, the jury returned a verdict in favor of N.B. The jury awarded N.B. future economic damages of $25,000 and past non-economic damages of $5,000, for a total of $30,000. The jury did not award Oster damages and found her 45% at fault for N.B.'s accident. The jury attributed 0% fault to Kevin Terwilliger. Of the remaining fault, 30% was attributed to Josh Terwilliger and 25% to Seewalker. The district court found N.B. was entitled to judgment in the amount of $9,000 against Josh Terwilliger and $7,500 against Seewalker.

[¶11] After the trial, two motions for a new trial were filed on behalf of N.B., not Oster. The district court denied the motions. N.B. and Oster appealed.

II

[¶12] On appeal, N.B. and Oster raise four main issues. First, N.B. and Oster argue there was an irregularity in the proceedings under N.D.R.Civ.P. 59(b)(1) that resulted in harmful error. Second, N.B. and Oster argue the district court erred under N.D.R.Civ.P. 59(b)(7) when it did not explain where possible awarded funds would go. Third, they argue the jury verdict was rendered under a misapprehension of the instructions or prejudice under N.D.R.Civ.P. 59(g). Fourth, they argue the jury was prejudiced against Oster.

[¶13] This Court reviews a district court's decision on a motion for a new trial for an abuse of discretion. *Riddle v. Riddle*, 2018 ND 62, ¶ 5, 907 N.W.2d 769.

> A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination.

*Id.* (quoting *Carroll v. Carroll*, 2017 ND 73, ¶ 9, 892 N.W.2d 173).

4

## A

[¶14] The Terwilligers and Seewalker argue N.B. and Oster waived any objection to the district court's answer to the jury's question. Section 28-14-19, N.D.C.C., lays out the procedure for a district court to respond to jury questions. The relevant portion states:

> [If the jurors] desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the parties or counsel.

N.D.C.C. § 28-14-19. When a court answers a jury's question on a point of law, it is further instructing the jury. *Moszer v. Witt*, 2001 ND 30, ¶ 17, 622 N.W.2d 223. As a result, "The parties have a right to have the exceptions noted to the jury instructions to which they did not agree." *Id.* This Court has said:

> A party who objects to a proposed jury instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection. Generally, a party failing to object to the giving or the failure to give an instruction after having adequate time to take exceptions waives the objection, and the instructions become the law of the case.

*Bakke v. D & A Landscaping Co., LLC*, 2012 ND 170, ¶ 14, 820 N.W.2d 357 (cleaned up).

[¶15] In this case, N.B.'s attorney objected and argued the answer to the jury's question should include an instruction on what the law allows regarding placing awards in a trust. Although the attorney did not provide a specific statute, N.B.'s attorney indicated his belief that the law required the money to go into a trust account. Therefore, an objection was made to the proposed answer to the jury's question and the issue was not waived.

## B

[¶16]  N.B. and Oster claim the lack of a response regarding a trust caused an irregularity in the proceedings and harmful error that warranted a new trial

5

under N.D.R.Civ.P. 59(b)(1). Additionally, they argue the district court erred under N.D.R.Civ.P. 59(b)(7) when it refused to give an answer on the possibility of a trust. Rule 59(b)(1) and (7), N.D.R.Civ.P., state:

> **(b) Grounds for New Trial.** The court may, on motion of an aggrieved party, vacate the former verdict or decision and grant a new trial on any of the following grounds materially affecting the substantial rights of the party:
>
> (1) irregularity in the proceedings of the court, jury, or adverse party, or any court order or abuse of discretion that prevented a party from having a fair trial;
>
> .        .        .
>
> (7) errors in law occurring at trial and, when required, objected to by the moving party . . . .

An irregularity means "non-conformance to a rule or a law, or failure to follow the requirement of the law." *Johnson v. Buskohl Const. Inc.*, 2015 ND 268, ¶ 12, 871 N.W.2d 459 (quoting *Felix v. Lehman*, 74 N.D. 125, 20 N.W.2d 82, 84 (1945)).

[¶17] Section 30.1-29-09, N.D.C.C., gives a court permissive authority to enact protective measures for the property and affairs of a minor if a basis for one exists under N.D.C.C. § 30.1-29-01. This includes authorizing a trust. N.D.C.C. § 30.1-29-09. To determine if a basis exists, there needs to be a petition, notice, and a hearing. N.D.C.C. § 30.1-29-01.

[¶18] Here, N.B. points to no law that would require the district court to give an instruction on the trust issue. Rather, the statute cited by N.B. gives a court permissive authority to place property in a trust. In order to exercise that authority, a petition must be made, notice must be given, and a hearing needs to take place. None of those things occurred in this case, as they would occur after the jury made its award. However, nothing in the statute requires a court to make a jury aware that this is a possibility. Nevertheless, N.B. and Oster were free to argue in closing, without objection, that an award for N.B. could go into a trust, as they did here.

6

[¶19] Although the district court had permissive authority to provide an answer explaining N.D.C.C. § 30.1-29-09, no law required the court to give an instruction on the trust issue. The jury did not need an instruction on the issue of a trust in order to reach a verdict. As a result, the court did not fail to conform to the law or fail to follow a requirement of the law. No irregularity took place under Rule 59(b)(1) and no error exists under Rule 59(b)(7). Therefore, the court did not abuse its discretion when it denied the motion for a new trial under Rules 59(b)(1) and 59(b)(7).

C

[¶20] N.B. and Oster argue the district court abused its discretion when it denied N.B.'s motion for a new trial under Rule 59(g). The Terwilligers and Seewalker argue N.B. waived her argument under this rule because she only raised it orally at the hearing on the motion for a new trial. "It is well established that arguments not raised before the district court cannot be raised for the first time on appeal." *Morris v. Moller*, 2012 ND 74, ¶ 8, 815 N.W.2d 266. Here, N.B. raised the Rule 59(g) argument at the hearing and the court subsequently ruled on it. Therefore, the Rule 59(g) argument was not waived.

[¶21] N.B. and Oster argue the jury disregarded the district court's instructions because the award did not meet the severity of the injury. Additionally, they argue the jury operated under the influence of passion or prejudice after defense counsel asked questions about the race and income level of N.B. and Oster. Rule 59(g), N.D.R.Civ.P., states:

> **(g) Jury Verdict Vacated by Court.** The court in which the action is pending, on its own motion, may vacate the jury's verdict and grant a new trial if the jury has plainly disregarded the court's instructions or the evidence in the case is such that it convinces the court the verdict was rendered under a misapprehension of the instructions or under the influence of passion or prejudice.

[¶22] "We uphold special verdicts on appeal whenever possible and set aside a jury's special verdict only if it is perverse and clearly contrary to the evidence." *Moszer*, 2001 ND 30, ¶ 11. This Court has adopted a test for "reconciling apparent conflicts in a jury's verdict." *Id.*

7

> Whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.

*Id.* (quoting *Barta v. Hinds,* 1998 ND 104, ¶ 6, 578 N.W.2d 553) (cleaned up).

[¶23] "When injuries are uncertain and based upon opinion it is entirely within the province of the jury to find the amount of damages, if any, and it would be an invasion of the jury's function for the court to direct the finding of a certain amount." *Nesseth v. Omlid*, 1998 ND 51, ¶ 13, 574 N.W.2d 848. Conformance to the evidence and the district court's instructions negates any assertion that the verdict was rendered under passion or prejudice under N.D.R.Civ.P. 59(g). *See Kerzmann v. Rohweder*, 321 N.W.2d 84, 88 (N.D. 1982).

[¶24] In this case, the special verdict is not perverse or clearly contrary to the evidence. Although it is a lower amount than N.B. and Oster would have liked, the evidence presented at trial was based on the opinion of various experts. One doctor testified he believed N.B. did not and would not need any current or future medical care related to the accident. On the other hand, N.B. points to the testimony of the economist for the defense stating N.B. would have $63,030 in future economic injuries. Additionally, N.B. includes the amount she would have to pay her expert as a reason the verdict is not adequate.

[¶25] It was entirely within the province of the jury to find the amount of damages in this case based on the evidence presented and the witnesses' testimony. *See City of Grand Forks v. Hendon/DDRC/BP, LLC*, 2006 ND 116, ¶ 11, 715 N.W.2d 145 (upholding a jury's award in a condemnation action on appeal when the award fell within the range of evidence presented at trial). The $30,000 in future economic damages and past non-economic damages was not perverse or clearly contrary to the evidence. The evidence indicated N.B. could have significant costs or no future costs at all due to her injuries. The jury had the duty to weigh the evidence and assign damages, if any. The award

represents a logical and probable decision on the relevant issues submitted to the jury.

[¶26] N.B. and Oster claim the jury was prejudiced against N.B. based on questions concerning Oster's race, income level, and adolescent years. Although these questions were ill-conceived and inappropriate, the verdict conformed to the evidence, and the jury followed the instructions the district court gave it. Defense counsel asking inappropriate questions is not enough to show the jury acted under the influence of passion or prejudice. Therefore, the district court did not abuse its discretion when it refused to grant a new trial under Rule 59(g).

D

[¶27] N.B. and Oster also argue the jury was prejudiced against Oster, which extended to N.B., warranting a new trial because the award was inadequate. Under N.D.R.Civ.P. 59(b)(5), "excessive damages appearing to have been awarded under the influence of passion and prejudice" are grounds for a new trial. However, an inadequate jury award provides a basis for a new trial when it is without support in the evidence. *Condon v. St. Alexius Medical Ctr.*, 2019 ND 113, ¶ 30, 926 N.W.2d 136; N.D.R.Civ.P. 59(b)(6).

[¶28] In the context of N.D.R.Civ.P. 59(b)(5), "We have stated that passion and prejudice, in order to justify the granting of a new trial, usually connote anger, resentment, hate, and disregard of the rights of others." *Roberts v. Hail Unlimited*, 358 N.W.2d 776, 781 (N.D. 1984). "In addition, a presumption exists that the jury consists of fair-minded persons and that the jury's verdict represents an honest judgment." *Id.* "This presumption is overcome only when the jury's verdict is so excessive as to shock the conscience of the court." *Id.*

[¶29] N.B. and Oster argue the jury's award was the opposite of excessive and was inadequate to compensate N.B. for her injuries. N.B. and Oster have shown no reason to overcome the presumption that the jury's verdict represents an honest judgment of fair-minded persons. To justify a new trial for an inadequate jury award, as N.B. and Oster allege, they needed to show the award was without support in the evidence. N.B. and Oster did not meet

9

that burden. Testimony of Dr. Chadwick indicated N.B. would not have lasting impairments from her injuries, contradicting the evidence showing long-term and costly effects due to the same injuries. This evidence supports the jury's lower award to N.B. Therefore, the district court did not abuse its discretion when it found no jury prejudice against Oster and denied the motion for a new trial.

## III

[¶30] We affirm the district court's orders denying the motions for a new trial.

[¶31] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte