2004 ND 46

**Sefin MUHAMMED, Plaintiff and Appellant**

v.

**Ellen WELCH, Defendant and Appellee.**

**No. 20030182.**

Supreme Court of North Dakota.

Feb. 25, 2004.

Duane A. Lillehaug (argued), and H. Patrick Weir, Jr. (on brief), Lee Hagen Law Office, Ltd., Fargo, N.D., for plaintiff and appellant.

Jacqueline Sue Anderson (argued), and William P. Harrie (on brief), Nilles, Hansen & Davies, Ltd., Fargo, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1]   Sefin Muhammed appealed from a summary judgment dismissing his personal injury action against Ellen Welch arising out of an automobile accident.   We conclude the district court improperly granted summary judgment because Muhammed has raised a genuine issue of material fact whether the defendant is equitably estopped from raising the statute of limitations as a bar to the action.   We reverse and remand for further proceedings.

I

[¶ 2]   On December 27, 1995, Muhammed was a passenger in a vehicle that was struck by Welch's vehicle in Fargo. The next day, Carlton Goughnour, an adjuster with Noble Adjustment Company, was assigned by Welch's insurer, Austin Mutual Insurance Company, to investigate and adjust a claim relating to the accident. After investigating the accident, Goughnour did not anticipate any personal injury claims and closed the file in August 1996. On April 30, 1998, Welch died from unrelated causes.   No probate proceedings were initiated after her death and no personal representative was appointed for her estate.

[¶ 3] In January 1999, an attorney contacted Goughnour and informed him he was representing Muhammed on a personal injury claim arising from the accident. Unaware that Welch had died, Goughnour reopened the file and initiated settlement discussions with Muhammed's attorney. In July 2001, Muhammed's present attorneys began representing him on the claim.

[¶ 4] On September 12, 2001, Muhammed sued "Ellen Welch" and a summons and complaint were served by certified mail, restricted delivery, addressed to "Ellen Welch, P.O. Box 751, Dalton, MN 56324." Pat Welch, Ellen Welch's widower, received and signed for the certified mail on September 13, 2001, and turned it over to his insurance agent. The insurance agent forwarded the summons and complaint to Austin Mutual and also informed the company that Ellen Welch had died. Goughnour then learned that Ellen Welch was dead.

[¶ 5] Goughnour contacted Muhammed's attorney and requested an indefinite extension of time to answer the complaint in the hope that a settlement could be reached. Muhammed's attorney granted the request. Goughnour did not tell Muhammed's attorney Ellen Welch was dead. In September 2001, Goughnour sent Muhammed's attorney a letter stating in part:

> During our conversation, you granted an indefinite time to answer your Summons and Complaint. Summons and Complaint was filed as statute of limitations was about to run out December of this year. We further discussed our $10,000 offer to your client, at the time he was represented by Paul Johnson. This offer stands.

[¶ 6] Settlement discussions continued until March 13, 2002, when Muhammed's attorney withdrew the indefinite extension of time to file an answer. Ellen Welch's death was not disclosed to Muhammed's attorney during any of the settlement negotiations. On March 27, 2002, the day the statute of limitations expired, an answer was interposed on behalf of "Defendant Ellen Welch," stating in part that "Defendant Ellen Welch" demanded a trial by a jury of nine. Her death was not disclosed in the answer. On April 10, 2002, the defense served an amended answer raising insufficiency of process and service of process and lack of subject matter jurisdiction. Muhammed's attorney was not advised of Ellen Welch's death until May 23, 2002.

[¶ 7] In January 2003, the defendant moved for summary judgment, arguing the action should be dismissed for insufficient service of process and because it was barred by the statute of limitations. Muhammed argued service on Pat Welch constituted service on Ellen Welch's estate; the defendant fraudulently concealed Ellen Welch's death, allowing an additional year after learning of her death to bring the action under N.D.C.C. § 28–01–24; and the doctrine of equitable estoppel applied to prevent the bar of the statute of limitations. The district court rejected these arguments and granted the motion for summary judgment dismissing Muhammed's claim with prejudice.

## II

[¶ 8] In *Weiss v. Collection Ctr., Inc.*, 2003 ND 128, ¶ 8, 667 N.W.2d 567 (citations omitted), we summarized our standard of review for an appeal from a summary judgment:

> Summary judgment is a procedural device which promptly resolves an action on the merits without a trial if the evidence shows either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be

drawn from undisputed facts, or if resolving the factual disputes will not change the result. If reasonable persons could reach only one conclusion from the facts, issues of fact may become issues of law. "Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts." When reviewing a summary judgment, this Court views the evidence in the light most favorable to the nonmoving party and gives that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. We review de novo the question of law whether the trial court properly granted summary judgment.

[¶ 9] The district court dismissed Muhammed's claim because "service was never made on a personal representative" of Ellen Welch's estate and because "the statute of limitations has now run."

## A

[¶ 10] Muhammed argues the district court erred in ruling service of process on Pat Welch did not constitute proper service on Ellen Welch's estate.

[¶ 11] Absent valid service of process, even actual knowledge of the existence of a lawsuit is insufficient to effectuate personal jurisdiction over a defendant. *Kimball v. Landeis,* 2002 ND 162, ¶ 20, 652 N.W.2d 330. Muhammed relies on *Code v. Gaunce,* 315 N.W.2d 304, 306 (N.D.1982), in which this Court held service of process was sufficient where the defendant's daughter signed for the certified mail instead of the defendant, because "the summons and complaint were sent by mail addressed to the person to be served, Gaunce, a return receipt was requested, and there is no question that delivery resulted." Here, Muhammed attempted service under N.D.R.Civ.P. 4(d)(2)(A)(v),

which permits service by "any form of mail . . . addressed to the individual to be served and requiring a signed receipt and resulting in delivery to that individual." Unlike the situation in *Gaunce,* Pat Welch's signing of the certified mail did not result in delivery to Ellen Welch, nor could it have resulted in delivery, because Ellen Welch was deceased at that time. No probate proceedings were initiated after her death, and neither Pat Welch nor anyone else was appointed personal representative of her estate. Under these circumstances, the proper procedure is for a claimant to initiate probate proceedings in order to present a claim against the estate. *See* N.D.C.C. § 30.1–14–01; *Matter of Estate of Stirling,* 537 N.W.2d 554, 558–59 (N.D.1995).

[¶ 12] Service on the decedent's widower did not constitute service on the decedent's estate under these circumstances. We conclude the district court did not err in ruling service was insufficient for purposes of commencing an action against Ellen Welch's nonexistent estate.

## B

[¶ 13] Muhammed argues, because his claim against Ellen Welch's estate was fraudulently concealed, the district court erred in not allowing him an additional year after learning of her death to file the lawsuit under N.D.C.C. § 28–01–24.

[¶ 14] Section 28–01–24, N.D.C.C., provides that "[w]hen, by fraud or fraudulent concealment, a party against whom a claim for relief exists prevents the person in whose favor such claim for relief exists from obtaining knowledge thereof, the latter may commence an action within one year from the time the claim for relief is discovered by him or might have been discovered by him in the exercise of dili-

gence." The statute "is designed to extend the period of time within which an action, otherwise barred by the passage of time because of a statute of limitation, may be brought when one, by fraud or fraudulent concealment, has prevented another from obtaining knowledge of the existence of a cause of action." *Phoenix Assurance Co. of Canada v. Runck,* 366 N.W.2d 788, 791 (N.D.1985).

[¶ 15] Here, Muhammed alleges deception in not disclosing the death of a party, not deception in the existence of the cause of action. Muhammed was aware of the cause of action, but filed the action against a nonexistent party. We conclude the district court did not err in ruling N.D.C.C. § 28-01-24 was inapplicable under the circumstances.

## C

[¶ 16] Muhammed argues the district court erred in ruling the defendant was not equitably estopped from relying on the statute of limitations as a bar to the action.

[¶ 17] The court held estoppel did not apply in this case as a matter of law, because N.D.C.C. § 31-11-06 refers to a "party's own" declaration, act or omission, and "the party against whom [Muhammed] is claiming estoppel is deceased and cannot be held to have intentionally or deliberately misled [Muhammed] into believing she was not deceased in order to avoid this lawsuit." The court alternately held, even if estoppel did apply, Muhammed "would still need to serve Defendant's estate with process," and because "the statute of limitations has run on this claim, serving Defendant's estate would be to no avail because the Complaint would not relate back to anything since the first service was a nullity."

[¶ 18] This Court has recognized that the doctrine of equitable estoppel may preclude application of a statute of limitations as a defense by one whose actions mislead another, thereby inducing that person to not file a claim within the statutory period. *See Hoffner v. Johnson,* 2003 ND 79, ¶¶ 25–26, 660 N.W.2d 909; *Snortland v. State,* 2000 ND 162, ¶ 15, 615 N.W.2d 574; *Narum v. Faxx Foods, Inc.,* 1999 ND 45, ¶ 24, 590 N.W.2d 454; *Reiger v. Wiedmer,* 531 N.W.2d 308, 310 (N.D. 1995); *Burr v. Trinity Med. Ctr.,* 492 N.W.2d 904, 908 (N.D.1992); *Schmidt v. Grand Forks Country Club,* 460 N.W.2d 125, 129–30 (N.D.1990); *Szarkowski v. Reliance Ins. Co.,* 404 N.W.2d 502, 507 (N.D. 1987); *Krueger v. St. Joseph's Hosp.,* 305 N.W.2d 18, 25 (N.D.1981); *Fetch v. Buehner,* 200 N.W.2d 258, 261 (N.D.1972). A delay may be excusable if it is not unreasonably protracted, but is induced by the defendant's promises, suggestions, or assurances which, if carried into effect, would result in a solution or adjustment without litigation. *Narum,* 1999 ND 45, ¶ 24, 590 N.W.2d 454. In *Schmidt,* 460 N.W.2d at 129–30, we explained:

> The reason for the rule is that "one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought." Annot., *Promises to settle or perform as estopping reliance on statute of limitations,* 44 A.L.R.3d 482, 488 (1972). While "the mere conduct of settlement negotiations or discussions by a defendant with a plaintiff does not alone provide a basis for estopping the defendant from pleading the statute of limitations" [Annot., *Settlement negotiations as estopping reliance on statute of limitations,* 39 A.L.R.3d 127, 131 (1971) ], it is sufficient

if the defendant's " 'conduct or promises are such as are naturally calculated to and do "induce plaintiff into a belief that his claim would be adjusted if he did not sue." ' " *Szarkowski v. Reliance Ins. Co., supra,* 404 N.W.2d at 507 [quoting *Douglass v. Douglass,* 199 Okl. 519, 188 P.2d 221, 224 (1947) ].

[¶ 19] The doctrine of equitable estoppel is codified in N.D.C.C. § 31–11–06, which provides that "[w]hen a party, by that party's own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." To successfully implement equitable estoppel under N.D.C.C. § 31–11–06, the plaintiff carries the burden of proving three elements:

First, the plaintiff must prove that the defendant made statements and "from the nature of defendant's statements and all of the surrounding facts and circumstances that the statements were made with the idea that plaintiff would rely thereon." . . . Second, the "plaintiff must show that she relied on the representations or acts of defendant and, as a result of that reliance, she failed to commence the action within the prescribed period." . . . Lastly, "the plaintiff must show that the acts of defendant giving rise to the assertion of estoppel must have occurred before the expiration of the limitation period."

*Burr,* 492 N.W.2d at 908.

[¶ 20] Additionally, the suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. *Krueger,* 305 N.W.2d at 25. For an estoppel to arise from silence, the silence must be accompanied by a duty to speak out, reasonable reliance on the silence, and result-

ing prejudice. *Ray Co., Inc. v. Johnson,* 325 N.W.2d 250, 254 (N.D.1982); *see also Baird v. Stephan,* 52 N.D. 568, 588, 204 N.W. 188, 195 (1925) (stating "[e]stoppel by silence arises where a person who by force of circumstances is under a duty to another to speak refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice"); *Branthover v. Monarch Elevator Co.,* 33 N.D. 454, 459, 156 N.W. 927, 929 (1916) (stating "[t]he true test is whether or not the circumstances are such as to impose upon one in equity and good conscience the duty to speak"). The existence of a duty to disclose relieves the injured party of the burden of showing an affirmative deception to postpone the running of a statute of limitations. *Snortland,* 2000 ND 162, ¶ 15, 615 N.W.2d 574.

[¶ 21] We reject the district court's conclusion that equitable estoppel under N.D.C.C. § 31–11–06 does not apply because the statute refers to a "party's own" declaration, act or omission, and the party against whom estoppel is claimed is deceased. It is widely recognized that "an insurance adjuster acting for an insurance company may be considered the agent of the insured so as to estop the defendant-insured from raising the statute of limitations defense." *Sander v. Wright,* 394 N.W.2d 896, 899 (S.D.1986). *See also* 7 Holmes' *Appleman on Insurance 2d* § 49.21 (1998), and cases cited therein. This Court implicitly recognized that principle in *Reiger,* 531 N.W.2d at 310, where we reversed a summary judgment and remanded for trial on the issue of whether any statements or actions of the defendant's insurance adjuster estopped the defendant from raising the statute of limitations as a defense. We will not interpret N.D.C.C. § 31–11–06 to provide a loophole for evading an estoppel defense when the

death of a "party" is the fact that has been allegedly concealed from the plaintiff.

[¶ 22] Our interpretation is supported by cases in which equitable estoppel has been asserted as a bar to application of the statute of limitations when, unknown to the plaintiff, the named defendant is deceased. For example, in *Wells v. Lueber*, 43 Ill.App.3d 973, 3 Ill.Dec. 126, 358 N.E.2d 293 (1976), the plaintiff and Orville Winet were involved in a car accident and Winet died several months later. The plaintiff sued for personal injuries within the statute of limitations, naming Orville Winet as defendant, but the summons was returned by the sheriff with a notation that Winet had died. After the statute of limitations expired, the plaintiff learned of Winet's death and sought to amend the complaint to substitute the executors of Winet's estate as defendants. The trial court granted the motion to amend and the defendant moved to dismiss because the amended complaint was barred by the statute of limitations. The plaintiffs argued the defendants were estopped from pleading the statute of limitations defense. The plaintiff's attorney submitted an affidavit stating that before the original complaint was filed, Winet's insurance carrier conceded liability, made numerous settlement offers and made advance payments for lost wages and medical expenses. The attorney further stated the insurance carrier discussed settlement before and after expiration of the limitations period, encouraged plaintiff's counsel to delay in filing suit, and failed to inform the plaintiff or her attorney of Winet's death. The trial court denied the motion to dismiss.

[¶ 23] The appellate court agreed with the defendants that the original complaint against Winet "was a complete nullity," but affirmed the denial of the motion to dismiss and remanded for further proceedings on the issue of equitable estoppel:

The mere pendency of negotiations, of course, would not be sufficient to work an estoppel against defendants. The foregoing allegations, however, charge the insurance carrier with conduct calculated to lull the plaintiff into a reasonable belief that the case would be settled without suit and that the defense of the statute of limitations would not be asserted. Upon proof of such conduct, defendants could be estopped from asserting the statute of limitations, and prior decisions require that plaintiff be given an opportunity to present such proof to the trier of fact.

Despite the urgings of Orville Winet's insurance carrier, as alleged, plaintiff did file a timely complaint, albeit against a non-existent party. The fact of her reliance on any representation made is thus put in issue. In addition, plaintiff could easily have discovered that Orville Winet was dead from examining the return of service by the Madison County Sheriff in the circuit clerk's file. A party claiming the benefit of estoppel must prove that he reasonably relied upon the representations and conduct of the party against whom the estoppel is alleged ... and did not close his eyes to the obvious.... In considering this element of the estoppel doctrine, the trier of fact may take the foregoing facts into account. Those facts, however, are not sufficient to require a ruling that, as a matter of law, plaintiff was not "lulled into a reasonable belief" that her claim would be settled.

*Wells*, 3 Ill.Dec. 126, 358 N.E.2d at 294–95 (citations omitted). The appellate court remanded the case for a jury to determine the equitable estoppel issue, and if the plaintiff succeeded on that issue, for a trial on the personal injury action. *See also Vaughn v. Speaker*, 156 Ill.App.3d 962, 109 Ill.Dec. 245, 509 N.E.2d 1084, 1088 (1987),

*aff'd,* 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885 (1988) (holding plaintiff raised question of fact whether defendant could rely on statute of limitations by alleging insurance company did not inform plaintiff of defendant's death and company conceded liability, advanced payments to settle property claim, discussed settlement before and after expiration of limitations period, and offered $15,000 to settle the personal injury claim).

[¶ 24] Another example is *Pierce v. Johnson,* 154 N.C.App. 34, 571 S.E.2d 661 (2002), where the plaintiff was involved in a car accident with John Daniel Johnson, who died of unrelated causes almost two years after the accident. John Daniel Johnson's son, Roby Daniel Johnson, was appointed executor of the estate. Five months before the running of the statute of limitations, the plaintiff sued John Daniel Johnson for her personal injuries, and the executor of the estate accepted service of the complaint by signing the name "Daniel Johnson" on the return receipt for the certified mail. *Id.* at 662. The executor's attorney, as "Attorney for Defendant," moved to dismiss for lack of jurisdiction over the person, insufficiency of process, and insufficiency of service. *Id.* at 663. The executor's attorney made two offers of judgment and served the plaintiff with interrogatories and a request for production of documents, all signed by the attorney as "Attorney for Defendant." *Id.* After the statute of limitations expired, the executor's attorney noticed a hearing on the motion to dismiss, and revealed for the first time that John Daniel Johnson had died. The plaintiff orally moved to amend the complaint and substitute the estate of the defendant, but the trial court denied the motion to amend and granted the motion to dismiss.

[¶ 25] The appellate court reversed and ruled the estate was equitably estopped, as a matter of law, from claiming the bar of the statute of limitations:

Here, the record shows that Ms. Pierce initiated the instant action on 28 April 2000, within the statute of limitations. . . . However, Ms. Pierce sued the decedent individually instead of bringing the suit against the personal representative or collector of defendant's estate. The summons and complaint were then served on the personal representative of defendant's estate, Roby Daniel Johnson. Instead of signing for the summons and complaint in his capacity as personal representative, Roby Daniel Johnson signed the return receipt "Daniel Johnson," the name he shared with the deceased defendant. By so doing, the personal representative of Johnson's estate missed an opportunity to inform Ms. Pierce that John Daniel Johnson was dead, and effectively, conducted the defense of the action as though John Daniel Johnson was still alive.

This misrepresentation as to the physical and legal existence of John Daniel Johnson was continued by the subsequent conduct of the purported "Attorney for Defendant." On 6 June 2000, the motion to dismiss was filed in the name of John Daniel Johnson. Although the motion to dismiss did raise the issue of Ms. Pierce's failure to name a real party in interest and failure to join a necessary party, since it was signed by the purported "Attorney for Defendant," it did not place Ms. Pierce on notice that John Daniel Johnson was in fact dead and that she needed to proceed against the personal representative of John Daniel Johnson's estate.

Additionally, after receipt of the motion, Ms. Pierce's attorney filed the proof of service certifying that service was obtained on John Daniel Johnson at his last known address. Following that, Ms. Pierce's attorney received two of-

fers of judgment, a set of interrogatories and request for production of documents, and a request for monetary relief sought. They were all signed by the purported "Attorney for Defendant" and received within the statute of limitations. According to the record, the personal representative of John Daniel Johnson's estate and the purported "Attorney for Defendant" took no affirmative steps to inform Ms. Pierce or her counsel that defendant was in fact dead. Had they done so, Ms. Pierce would have been able to amend her complaint to substitute the personal representative as party defendant within the statute of limitations, which did not expire until 14 October 2000.

As a result of the conduct of the personal representative and the purported "Attorney for Defendant," Ms. Pierce was apparently led to believe that John Daniel Johnson was still alive. By the 8 March 2001 hearing, the statute of limitations expired and Ms. Pierce was without recourse. John Daniel Johnson's estate should not benefit from such conduct. By their action, the personal representative of John Daniel Johnson's estate and the purported "Attorney for Defendant" led Ms. Pierce to believe that John Daniel Johnson was still alive. Ms. Pierce and her counsel apparently relied on this representation. John Daniel Johnson's estate cannot now assert an inconsistent position to the detriment of Ms. Pierce. Consequently, we hold as an additional ground for granting relief to Ms. Pierce that John Daniel Johnson's estate was equitably estopped from asserting the statute of limitations as a defense to Pierce's action.

*Pierce*, 571 S.E.2d at 667–68.

[¶ 26] As *Wells, Vaughn* and *Pierce* suggest, under certain circumstances, representatives of a deceased defendant may have an affirmative duty to speak. Courts have described the source of the duty as general notions of honesty and fair dealing, and left to the trier of fact to decide whether such a duty arises under the particular circumstances. *See Delson v. Minogue*, 190 F.Supp. 935, 937 (E.D.N.Y. 1961); *Kilburn v. Keenan*, 27 Conn.Supp. 394, 240 A.2d 213, 214 (1967); *Pellerin v. Cashway Pharm. of Franklin*, 396 So.2d 371, 373 (La.Ct.App.1981); *compare Yoh v. Hoffman*, 29 Kan.App.2d 312, 27 P.3d 927, 931 (2001) (holding appropriate course for lawyer is "to stand silent or to inform opposing counsel and the court" of defendant's death because "[k]nowingly filing a pleading on behalf of a dead person as though he or she is still alive is fraud"). North Dakota law also recognizes that "[k]nowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue" is an unfair claim settlement practice "if done without just cause and if performed with a frequency indicating a general business practice." N.D.C.C. § 26.1–04–03(9)(a).

[¶ 27] The district court principally relied on two decisions in dismissing Muhammed's action. In *Van Slooten v. Estate of Schneider–Janzen*, 623 N.W.2d 269 (Minn.Ct.App.2001), two weeks before the statute of limitations expired the plaintiff sued Schneider–Janzen for damages resulting from an auto accident. The sheriff delivered the summons and complaint to the defendant's husband, who informed the sheriff his wife had died. The sheriff noted the death on the certificate of service. There was no probate of Schneider–Janzen's estate and no personal representative was ever appointed. More than two months after the statute of limitations expired, the plaintiff served the husband an amended summons and complaint naming as defendants Schneider–Janzen's estate and the husband as personal representa-

tive. The appellate court ruled the trial court erred in failing to dismiss the lawsuit for insufficiency of service of process because service upon the husband "was insufficient to commence an action against the estate." *Id.* at 271. The court reasoned it did not matter that the husband had actual notice of the claim because he was not the personal representative of the estate. The court also ruled that the amended summons and complaint could not relate back to the original summons and complaint to avoid the statute of limitations because the original action against the deceased was a "legal nullity" and, therefore, "there exists no action to which the amendment can relate back." *Id.* at 271–72.

[¶ 28] *Van Slooten* is distinguishable because the plaintiff did not assert that the defendant was equitably estopped from claiming the statute of limitations defense. Moreover, the "nullity theory" relied upon by the appellate court has recently fallen into disfavor by several courts when a deceased person, rather than the person's estate, has been named erroneously as the defendant. *See, e.g., Hamilton v. Blackman,* 915 P.2d 1210, 1216–18 (Alaska 1996); *Trimble v. Engelking,* 130 Idaho 300, 939 P.2d 1379, 1381–82 (1997); *Indiana Farmers Mut. Ins. Co. v. Richie,* 707 N.E.2d 992, 996–98 (Ind.1999); *Hinds v. Estate of Huston,* 31 Kan.App.2d 478, 66 P.3d 925, 928–29 (2003); *Pierce,* 571 S.E.2d at 664–67. The nullity rule has been criticized as "a remnant of an earlier era of strict pleading requirements" because "precluding amendment and relation back where a party is improperly named, would frustrate the purpose of our modern rules of pleading which seek to promote the resolution of disputes on their merits rather than to bar suit based on antiquated pleading requirements." *Trimble,* 939 P.2d at 1381. These courts hold their state counterpart to N.D.R.Civ.P. 15(c), which

provides for relation back of an amended pleading, is applicable under these circumstances if the requirements of the rule have been met. *See Hamilton,* 915 P.2d at 1217–18; *Trimble,* 939 P.2d at 1381–82; *Hinds,* 66 P.3d at 928–29; *Pierce,* 571 S.E.2d at 666. *Compare Richie,* 707 N.E.2d at 997–98 (permitting a plaintiff to amend to substitute the estate for the decedent because the "fundamental purpose of rule 15(c)—fairness to the incoming defendant—is met where, as in this case, the suit seeks only insurance proceeds and the insurance company had actual notice and knowledge of the suit"). This Court has adopted a liberal interpretation of N.D.R.Civ.P. 15(c) to allow a defendant's constructive notice of a suit to trigger the relation back of an amended pleading. *See Wayne–Juntunen Fertilizer Co. v. Lassonde,* 456 N.W.2d 519, 526 (N.D.1990).

[¶ 29] *Kimball v. Landeis,* 2002 ND 162, 652 N.W.2d 330, also relied upon by the district court, involved a negligence action against Landeis, whose mother had been appointed his legal guardian before the plaintiff served the summons and complaint on Landeis. Landeis moved to dismiss the action because the plaintiff had not served Landeis's guardian. After the trial court quashed the service on Landeis, the plaintiff personally served Landeis's guardian, but the statute of limitations had, by then, expired. The trial court granted Landeis's motion for summary judgment. This Court affirmed dismissal of the claim against Landeis because it was barred by the statute of limitations. We concluded "actual knowledge of Kimball's action did not confer personal jurisdiction over Landeis until his guardian was served." *Id.* at ¶ 20. We also concluded the doctrine of equitable tolling did not apply because the plaintiff "failed to establish reasonable and good faith action." *Id.*

at ¶ 33. We further held, although the plaintiff claimed he was not aware Landeis had a guardian, "Landeis's guardianship is a matter of public record, and Kimball has not demonstrated the guardianship could not have been ascertained by a timely diligent inquiry." *Id.* at ¶ 30. While we did not condone Landeis's failure to reflect his guardianship status in his answer, because the answer was mailed on the day the statute of limitations expired, "Landeis's failure to identify the guardianship in his answer could not have affected Kimball's failure to timely serve Landeis's guardian." *Id.* at ¶ 31. The record also reflected that the plaintiff had actual knowledge of the guardianship in June 2001, but did not attempt to serve the guardian until January 2002. *Id.* at ¶ 32.

[¶ 30] The district court in this case found *Kimball* "very analogous to the present situation" because "the first Answer served by Defendant in the present case came on the very day that the statute of limitations expired. The fact that Plaintiff was not informed that Defendant had died would not have mattered because Plaintiff would not have been able to timely serve a personal representative of Defendant's estate." However, *Kimball* is also distinguishable from the present case. Foremost, the equitable estoppel doctrine relied upon by Muhammed was not an issue in *Kimball. Kimball,* 2002 ND 162, ¶ 24, 652 N.W.2d 330, involved the doctrine of equitable tolling, which "[t]his Court has never adopted," and which differs from the doctrine of equitable estoppel. *See Burr,* 492 N.W.2d at 908 (noting the doctrine of equitable estoppel is one of the options other than equitable tolling to extend or avoid the statute of limitations). The elements for equitable tolling differ from the elements of equitable estoppel under N.D.C.C. § 31–11–06, and require "1) timely notice, 2) lack of prejudice to the

defendant, and 3) reasonable and good-faith conduct by the plaintiff." *Kimball,* at ¶ 24. *Kimball* also did not involve the allegedly concealed death of a party or include allegations that the defendant requested and received an indefinite extension of time to answer the complaint. Although *Kimball,* at ¶ 31, may suggest a rejection of relation-back principles applied by some courts, and *Bartell v. Morken,* 65 N.W.2d 270, 274 (N.D.1954), may have indicated acceptance of the "nullity theory," it is not necessary for us to apply these principles in this case. Courts which have adopted the nullity theory and rejected relation-back principles nevertheless have barred the defendant from raising the statute of limitations defense if the elements of equitable estoppel have been met. *See, e.g., Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill.Dec. 803, 533 N.E.2d 885, 889–92 (1988) (rejecting the relation-back doctrine to permit substitution of executor for decedent but remanding for factual determination whether defendant was equitably estopped from raising the statute of limitations defense); *Wells,* 3 Ill.Dec. 126, 358 N.E.2d at 295 (same); *Moore v. Luther,* 29 Kan.App.2d 1004, 35 P.3d 277, 279–81 (2001) (applying nullity theory when decedent was sued, but modifying dismissal to be without prejudice and suggesting executor could be sued and equitable estoppel could be raised to avoid statute of limitations).

[¶ 31] The parties in this case agree that the statute of limitations expired on March 27, 2002. Goughnour, the insurance adjuster, was informed of a potential claim in January 1999, about nine months after Ellen Welch died. No probate proceedings were initiated and no personal representative was appointed. Pat Welch was served September 12, 2001, signed for the certified mail, and gave the papers to his insurance agent, who turned them over to Austin Mutual. At this point, Austin

Mutual and Goughnor had been informed that Ellen Welch was dead. Fully aware that Ellen Welch was dead and six months before the statute of limitations expired, Goughnor requested and obtained an indefinite extension of time to answer the complaint without informing Muhammed's attorney of the death. Goughnour knew the statute of limitations was a concern to Muhammed. Settlement discussions continued without Goughnour or Austin Mutual disclosing the death. On the day the statute of limitations expired, the defendant finally answered without informing Muhammed of the death, and instead stated "Defendant Ellen Welch" demanded a jury trial. Not until one and one-half months after amending the answer to raise insufficiency of process and service of process and lack of subject matter jurisdiction, and more than two months after the statute of limitations had expired, was Muhammed informed that Ellen Welch was dead. Under these circumstances, we believe the trier of fact could find that Goughnour and Austin Mutual had a duty to disclose the fact of Ellen Welch's death to Muhammed at least from the time Goughnor requested and received the indefinite extension of time to file the answer, and that Goughnour and Austin Mutual lulled Muhammed "into a false sense of security" that his claim would be settled without being subjected to the statute of limitations defense.

■ [¶ 32] It is arguable that Muhammed should not reasonably have relied on Pat Welch's signature on the restricted delivery receipt as resulting in effective service on Ellen Welch, *see* N.D.R.Civ.P. 4(d)(2)(A)(v), and that Muhammed could have discovered on his own that Ellen Welch was dead. However, these factors do not defeat equitable estoppel as a matter of law, and are for the trier of fact to consider with the other evidence. *See Wells*, 3 Ill.Dec. 126, 358 N.E.2d at 295.

[¶ 33] We conclude the district court erred in dismissing Muhammed's complaint because he raised a genuine issue of material fact whether the defendant is estopped from claiming the statute of limitations defense.

### III

[¶ 34] It is unnecessary to address other issues raised. We reverse the summary judgment and remand for trial of the equitable estoppel issue. If equitable estoppel is found to apply in this case, Muhammed should be allowed to open and sue Ellen Welch's estate for damages. If equitable estoppel does not apply, the case should be dismissed.

[¶ 35] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.