2006 ND 250

**In the Matter of the Petition of Brent J. EDISON.**

**Brent J. Edison, Petitioner,**

v.

**A Hearing Panel of the Disciplinary Board of the North Dakota Supreme Court and William P. Harrie, Respondents.**

No. 20060091.

Supreme Court of North Dakota.

Dec. 5, 2006.

Rehearing Denied Jan. 17, 2007.

Brent J. Edison, Assistant Disciplinary Counsel, Bismarck, N.D., for petitioner.

Mark R. Hanson, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, N.D., for respondent William P. Harrie.

## REPRIMANDED

PER CURIAM.

[¶ 1] Disciplinary counsel petitioned this Court for review of a report of a hearing panel of the Disciplinary Board which ordered dismissal of a disciplinary proceeding against attorney William P. Harrie. We conclude there is clear and convincing evidence Harrie violated N.D.R. Prof. Conduct 4.1 and N.D.R. Lawyer Discipl. 1.2A(3), and we reprimand Harrie and order him to pay costs of $6,060.68.

I

[¶ 2] This disciplinary proceeding stems from an underlying lawsuit arising from a December 27, 1995 automobile accident in Fargo in which Sefin Muhammed was a passenger in a vehicle that was hit by a vehicle driven by Ellen Welch. Welch died from unrelated causes in April 1998. Muhammed's attorney was not aware of Welch's death, and on September 12, 2001, Muhammed sent a summons and complaint by certified mail, restricted delivery, to "Ellen Welch, P.O. Box 751, Dalton, MN 56324." Pat Welch, Ellen Welch's widower, received and signed for the certified mail on September 13, 2001, and gave the summons and complaint to his insurance agent. The agent forwarded the summons and complaint to Ellen Welch's insurance company and informed the company she had died. Settlement discussions between Muhammed's attorney and an insurance adjuster continued until March 13, 2002, when Muhammed's attorney withdrew an indefinite extension of time to serve an answer and informed the adjuster an answer was due by April 15, 2002.

[¶ 3] On March 14, 2002, Harrie was retained by the insurance company to defend the lawsuit. On March 18, 2002, Harrie received a file from the insurance company which included a letter from Welch's insurance agent to the insurance company indicating Ellen Welch had died. The file did not indicate when Ellen Welch had died or how Muhammed had served process on her. On March 27, 2002, Harrie served an answer on Muhammed on behalf of "Defendant Ellen Welch." On April 10,

2002, Harrie conferred with Pat Welch and learned about Ellen Welch's death in April 1998, and about the circumstances of Pat Welch's receipt of the summons and complaint. Harrie also learned that no probate proceedings had been initiated after Ellen Welch's death and no personal representative had been appointed for her estate. On April 10, 2002, Harrie requested proof of service from Muhammed's attorney and served an amended answer on Muhammed on behalf of "Defendant Ellen Welch," alleging insufficiency of service of process. In May 2002, Muhammed's attorney provided Harrie with proof of service for the lawsuit. On May 23, 2002, Harrie informed Muhammed's attorney that "Ellen Welch's surviving husband, Patrick [Welch], signed for the certified mail" and "it appears that service was improper and that the claim against Ellen Welch is barred by the statute of limitations." On May 27, 2002, Muhammed's attorney responded "[t]here is nothing in my file that [Ellen Welch] had died."

[¶ 4] The district court subsequently granted summary judgment dismissal of Muhammed's action against Welch, concluding the action was barred by the statute of limitations. In *Muhammed v. Welch*, 2004 ND 46, ¶ 12, 675 N.W.2d 402, we concluded the service of process was insufficient. However, we reversed the summary judgment and remanded for further proceedings to determine whether Welch was equitably estopped from claiming the statute of limitations as a defense. *Id.* at ¶¶ 33–34.

[¶ 5] In July 2005, disciplinary counsel petitioned for discipline against Harrie, alleging he violated N.D.R. Prof. Conduct 4.1, which provides that in the course of representing a client, a lawyer shall not make a statement of fact or law that the lawyer knows to be false, and N.D.R. Lawyer Discipl. 1.2A(3), which provides that a lawyer may be disciplined for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

[¶ 6] A hearing panel of the Disciplinary Board found Harrie was retained by the insurance company on March 14, 2002, to defend Muhammed's action against Ellen Welch, and Harrie received written materials from the insurance company on March 18, 2002, which included a letter indicating Welch had died. The panel found that letter did not indicate the date of Welch's death or the manner in which she had been served, and Harrie served an answer on behalf of "Defendant Ellen Welch" on March 27, 2002. The panel found that when Harrie served the initial answer, both Harrie and Muhammed's attorney were not aware of the three-month tolling provision for the statute of limitations in N.D.C.C. § 30.1–19–02. The panel also found that when Harrie served the initial answer, there was no evidence Harrie knew (1) the date of Ellen Welch's death, (2) that service of process on Ellen Welch was insufficient, or (3) that Muhammed's attorney did not know Ellen Welch had died. The panel found that Harrie's answer, which used the phrase "Defendant Ellen Welch," was "stylistic boilerplate customarily employed by Harrie." The panel found it was possible Muhammed's attorney may have been misled by the use of the term "Defendant Ellen Welch" in Harrie's initial answer, but Harrie's lack of knowledge of the date of Ellen Welch's death and of the manner of service of process, and Muhammed's attorney's lack of information regarding Ellen Welch's death all indicated Harrie did not intend to mislead or deceive Muhammed's attorney. The hearing panel concluded Harrie did not knowingly make a false statement or misrepresentation in violation of N.D.R. Prof. Conduct 4.1 and he did not engage in any conduct involving dishonesty, fraud, deceit, or misrepresentation in

violation of N.D.R. Lawyer Discipl. 1.2A(3). The hearing panel ordered dismissal of the petition for discipline against Harrie. We granted disciplinary counsel's petition under N.D.R. Lawyer Discipl. 3.1F(1) for review of the hearing panel's decision.

## II

[¶ 7] We review disciplinary proceedings against attorneys de novo on the record. *In re Chinquist*, 2006 ND 107, ¶ 7, 714 N.W.2d 469. Disciplinary counsel must prove each alleged violation of a disciplinary rule by clear and convincing evidence. *Id.* We decide each case on its own facts, and although we give due weight to the findings, conclusions, and recommendations of a hearing panel, we do not act as a rubber stamp. *Id.*

## III

[¶ 8] Disciplinary counsel argues the evidence clearly and convincingly establishes Harrie violated N.D.R. Prof. Conduct 4.1 and N.D.R. Lawyer Discipl. 1.2A(3) by failing to immediately disclose Welch's death and by serving an answer and an amended answer on her behalf which falsely suggested she was still living. Disciplinary counsel concedes Harrie lacked a specific intent to mislead or deceive his adversary about the statute of limitations or the manner of service of process, but argues the hearing panel erred in ending its inquiry there. Disciplinary counsel argues that by filing answers on behalf of "Defendant Ellen Welch" and by failing to disclose Welch's death to his adversary until after Harrie knew there was a problem with service of process, Harrie acted "knowingly" and "negligently" under the standards for imposing discipline and his conduct warrants a reprimand. Harrie responds he did not have a duty to immediately disclose Ellen Welch's death to opposing counsel and the timing of his answers did not prejudice Muhammed. Harrie also argues he did not make an affirmative representation that falsely suggested Ellen Welch was alive. Harrie argues no sanction is warranted and he seeks dismissal of the petition.

### A

[¶ 9] Rule 1.2A(3), N.D.R. Lawyer Discipl., provides that a lawyer may be disciplined for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Rule 4.1, N.D.R. Prof. Conduct, provides that "[i]n the course of representing a client a lawyer shall not make a statement to a third person of fact or law that the lawyer knows to be false." At the time the hearing panel issued its decision and before an August 1, 2006 amendment, the official comment to Rule 4.1 provided that "[a] lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false." The rules of professional conduct define "knows" to mean "actual knowledge of the fact in question" and "fraud" to mean "conduct having a purpose to deceive and not merely negligent misrepresentation or negligent failure to apprise another of relevant information." N.D.R. Prof. Conduct, Terms. Additionally, the definitions in the North Dakota Standards for Imposing Lawyer Sanctions are incorporated into the North Dakota Rules for Lawyer Discipline by N.D.R. Lawyer Discipl. 1, and define "intent" as "the conscious objective or purpose to accomplish a particular result," "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or pur-

pose to accomplish a particular result," and "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

[¶ 10] The official comment to Rule 4.1 makes clear that an attorney generally does not have an affirmative duty to inform an opposing party of relevant facts, and we reject disciplinary counsel's assertion that Harrie had an affirmative duty to immediately disclose Ellen Welch's death before serving any pleadings in this case. However, Harrie served an answer and amended answer on behalf of Ellen Welch, and at least by the time of the amended answer, Harrie had actual knowledge that Welch had died.

[¶ 11] In *Muhammed*, 2004 ND 46, ¶ 26, 675 N.W.2d 402, we quoted *Yoh v. Hoffman*, 29 Kan.App.2d 312, 27 P.3d 927, 931 (2001) for the proposition that " '[k]nowingly filing a pleading on behalf of a dead person as though he or she is still alive is fraud.' " In *Yoh*, 27 P.3d at 929, the plaintiff was injured in a car accident. The defendant died several months later, and the plaintiff thereafter filed a personal injury action against the defendant. *Id.* Later, an attorney filed an answer on behalf of the defendant, signing the pleadings as "Attorneys for Defendant." *Id.* The plaintiff's attorney was not aware of the defendant's death until almost a year later during a case management conference. *Id.* The plaintiff moved to amend to name the administrator of the defendant's estate as the defendant. *Id.* The estate moved for summary judgment, claiming the statute of limitations had expired before the plaintiff served the administrator of the estate. *Id.* The trial court decided the action was properly filed within the statute of limitations. *Id.* The Kansas Court of Appeals

held that the amended petition related back to the filing of the original petition under Kansas law. *Id.* at 930–31. The court alternatively said that "[k]nowingly filing a pleading on behalf of a dead person as though he or she is still alive is fraud." *Id.* at 931. The court said the estate, its counsel, and an insurance company deliberately conspired to deceive their opponent, and the court concluded it was totally inappropriate to file an answer as "Attorneys for Defendant" because that answer was calculated to mislead by hiding the true state of affairs behind vague boilerplate defenses. *Id.*

[¶ 12] Although Harrie's conduct is not as egregious as the attorney's actions in *Yoh* and Harrie may not have intended to mislead or deceive Muhammed's attorney, Harrie's amended answer implied that Ellen Welch was alive and Muhammed's attorney testified there was nothing in the amended answer that changed the attorney's assumption that Ellen Welch was alive. Moreover, Harrie's evidence that filing boilerplate pleadings is standard insurance defense practice does not supersede a lawyer's obligation to not make a statement the lawyer knows to be false.

[¶ 13] Relying on *Kimball v. Landeis*, 2002 ND 162, 652 N.W.2d 330, Harrie nevertheless argues he had no affirmative duty to immediately inform Muhammed of Ellen Welch's death and the timing of his answers did not harm or prejudice Muhammed because those answers could not have affected Muhammed's failure to timely serve Welch. *Kimball* was a negligence action against Landeis, whose mother had been appointed Landeis's legal guardian before the plaintiff served the summons and complaint on him. *Id.* at ¶ 2. Landeis moved to dismiss the action because the plaintiff had not served Landeis's guardian. *Id.* at ¶ 3. After the district court quashed the service on Landeis, the plain-

tiff personally served Landeis's guardian, but the statute of limitations had expired by then. *Id.* at ¶ 4. The district court granted Landeis's motion for summary judgment. *Id.*

[¶ 14] We affirmed the dismissal of the negligence claim against Landeis, holding it was barred by the statute of limitations and the plaintiff had failed to establish reasonable and good faith action which would entitle him to equitable tolling. *Kimball,* 2002 ND 162, ¶¶ 1, 33, 652 N.W.2d 330. We said that although Landeis was not obligated to inform the plaintiff about the guardianship before the expiration of the statute of limitations, the defendant's answer should have reflected the guardianship status and we did not condone that failure. *Id.* at ¶¶ 30–31. However, the record reflected an affidavit of mailing of Landeis's answer by counsel on the day the statute of limitations expired, and under those circumstances, we concluded Landeis's failure to identify the guardianship in his answer could not have affected the plaintiff's failure to timely serve Landeis's guardian. *Id.* at ¶ 31. In the context of rejecting the plaintiff's argument for equitable tolling of the statute of limitations, we concluded the plaintiff failed to establish reasonable and good faith action which would entitle the plaintiff to equitable tolling. *Id.* at ¶¶ 32–33.

[¶ 15] In *Muhammed,* 2004 ND 46, ¶ 30, 675 N.W.2d 402, we distinguished *Kimball* from the factual scenario relevant to this disciplinary proceeding because the equitable estoppel doctrine relied upon by Muhammed was not an issue in *Kimball* and there were factual issues about whether Welch was equitably estopped from relying upon the statute of limitations. *Kimball* was not a disciplinary proceeding, and our statement about a party's obligation to inform another party of a guardianship before the expiration of a statute of limitations must be read in the context of the equitable tolling claim at issue in that case. Moreover, *Kimball* does not establish a requirement of prejudice for a violation of our rules of professional conduct.

[¶ 16] Although we may agree with the hearing panel's finding that Harrie's conduct does not rise to the level of an intent to mislead or deceive Muhammed or his counsel, that finding does not necessarily end our inquiry about whether Harrie's actions violated the proscription against making a statement the lawyer knows to be false in N.D.R. Prof. Conduct 4.1 or the proscription against a misrepresentation in N.D.R. Lawyer Discipl. 1.2A(3). Under the rules for professional disciplinary proceedings, a knowing act does not require an evil intent or a bad purpose; rather, the term means the act was done in the exercise of the performer's free will and was not done under coercion. *In re Bullis,* 2006 ND 228, ¶ 25, 723 N.W.2d 667; *In re LaQua,* 548 N.W.2d 372, 376 (N.D.1996). Here, even if Harrie's conduct did not rise to the level of an intent to mislead or deceive Muhammed's attorney we conclude, at a minimum, the evidence clearly and convincingly establishes the amended answer served by Harrie on behalf of "Defendant Ellen Welch" constituted a statement known to be false under N.D.R. Prof. Conduct 4.1 and a misrepresentation under N.D.R. Lawyer Discipl. 1.2A(3). *See also* N.D.R. Lawyer Discipl. 1.2A(1) ["lawyer may be disciplined for ... [v]iolating ... the North Dakota Rules of Professional Conduct"].

B

[¶ 17] Under N.D. Stds. Imposing Lawyer Sanctions 2.0, potential sanctions for Harrie's conduct include disbarment, suspension, reprimand, and assessment of costs. *See In re Boulger,* 2001 ND 210, ¶¶ 14–17, 637 N.W.2d 710. In determining

a proper sanction, N.D. Stds. Imposing Lawyer Sanctions 3.0 directs this Court to consider "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." Under N.D. Stds. Imposing Lawyer Sanctions 5.13, a reprimand is generally appropriate when a lawyer knowingly engages in any conduct that involves misrepresentation. Under N.D. Stds Imposing Lawyer Sanctions 6.13, a reprimand is generally appropriate when a lawyer is negligent in determining whether statements are false and the lawyer's conduct causes injury or potential injury to a party to a legal proceeding or causes an adverse or potentially adverse effect on the legal proceeding. Under those standards, we conclude a reprimand is the appropriate sanction for Harrie's violation of N.D.R. Prof. Conduct 4.1 and N.D.R. Lawyer Discipl. 1.2A(3).

IV

[¶ 18]   We issue this opinion as a reprimand for Harrie's conduct and direct him to pay costs of the disciplinary proceeding in the amount $6,060.68.

[¶ 19] GERALD W. VANDE WALLE, C.J., and WILLIAM F. HODNY, S.J., EVERETT NELS OLSON, S.J., and DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

[¶ 20] The Honorable EVERETT NELS OLSON, S.J., and the Honorable WILLIAM F. HODNY, S.J., sitting in place of CROTHERS, J., and KAPSNER, J., disqualified.